H. C. GRIEBEL et al., Appellees, v. BOARD OF SUPERVISORS OF CLINTON COUNTY et al., Appellants.

**DRAINS: Abandonment—Board Has No Power.** The board of super-
1  visors has no power to abandon a portion of a drainage improve-
    ment.

**DRAINS: Repair—Mandamus Not Maintainable to Control Discretion.**
2  The board of supervisors has fair discretion to refuse to proceed
    to the repair of a drainage improvement; and mandamus will not
    lie to control such discretion.

**Headnote 1:** 19 C. J. p. 712 (Anno.)  **Headnote 2:** 19 C. J. p. 701;
38 C. J. pp. 696, 750.

*Appeal from Clinton District Court.*—D. V. JACKSON, Judge.

FEBRUARY 17, 1925.

REHEARING DENIED JUNE 25, 1925.

ACTION for writ of mandamus, which, after hearing, was granted by the lower court. Defendants appeal.—*Reversed.*

*E. L. Miller,* for appellants.

*L. F. Sutton* and *W. T. Oakes,* for appellees.

ALBERT, J.—Drainage District No. 10, in Clinton County, was established on January 12, 1911. It is divided into various different lines, among which there is Line D, the same being a tile drain. On July 2, 1917, Griebel and others petitioned the board to have the drainage sys-tem cleaned out and the tile drain put in proper shape. The board of supervisors referred this application to one Anderson, a civil engineer, for report. He filed his report

1. DRAINS: aban-donment: board has no power.

on the 13th day of October, 1919, and on the 29th day of October, the matter came before the board. Griebel filed the following petition:

"We, the undersigned, being the owners of lands affected by Line D of Drainage District No. 10, do hereby petition the board of supervisors to reconstruct said tile line by laying a new tile line parallel to and about fifteen feet from the said Line D, said line to be laid according to the plans and profiles on file with the county auditor of Clinton County, Iowa. We hereby waive notice of our appearance before the board of supervisors, and agree to the said reconstruction, and waive claim for any damages by reason of the reconstruction of the tile line."

On May 4, 1920, the following resolution was passed by the board:

"Whereas, Line D in Drainage District No. 10 is obstructed and tile out of place to such an extent that it cannot be repaired; and whereas the board of supervisors finds the expense of reconstructing said line is greater than the benefits and greater than the district should bear; now therefore, be it resolved that said D line be abandoned."

After this action by the board, the present case was commenced, praying for a peremptory order of mandamus, commanding the board to forthwith repair said Line D, and for such other and further relief as may be considered just and equitable by the court.

What is hereinafter said must, in some respects, be partially speculative, because we do not have before us any plat of the drainage district, and nothing showing the areas, acreage, or original cost thereof. The evidence, however, shows that this Lateral D is something like 4,200 feet in length, but that the same has become practically worthless as a drainage project, because a large part of it was laid through quicksand; the tile have been dislodged in many places; and other parts of the same have been filled, so that that line fails to function in any way.

The engineer appointed by the board to make report thereon said that it was not feasible or practicable to repair the old line, it being too expensive and uncertain in results, in view of

the fact that it had been attempted a number of times, and had been a failure. He recommended the construction of an entirely new line, running parallel to the original line, and about fifteen feet distant therefrom. He suggested that, if an attempt is to be made to repair the old line, it would have to be replaced with sewer pipe, cemented at the joints, and would require a series of manholes, which he estimated would cost from $10,000 to $12,000, but that a new line would cost approximately $8,000. There seems to be no showing that the proposed new line, if constructed, would be of any more efficacy than the old one was. Speaking of this matter, the engineer says:

"It would be laid at a less depth, thus decreasing the fall. The soil would be about the same as the soil here where the original line was laid. There would possibly be the same tendency to settle out of position and to become displaced as in the original line."

Under the drainage law of Iowa as it existed at the time these proceedings were had, the district was a unit, and was treated and dealt with by the law as a whole. There was no provision in the law which gave the board any power to abandon any portion of the district. Section 1989-a21, Supplement to the Code, 1913, among other things provides:

"It shall be the duty of the board to keep the same in repair, and for that purpose they may cause the same to be enlarged, re-opened, deepened, widened, straightened or lengthened for a better outlet, and they may change or enlarge the same or cause all or any part thereof to be converted into a closed drain when considered for the best interests of the public rights affected thereby."

Under this section, there is nothing to indicate a right of the board to abandon any part of such drainage district. It is further to be noted that there is no specific power given to the board to change the location of the drain; but in House File 185 of the Acts of the Extra Session of the Fortieth General Assembly (Section 7556, Code of 1924), power is given to the board to change the location for better service. Of course, this latter provision was not in effect at the time the matter was under consideration by the board. It is apparent, therefore, that the board, in making the order abandoning this Line D

of said drainage district, exceeded its power. That being so, it amounts simply to a refusal of the board to relieve the situation about which complaint was made, as to the functioning of this branch of the drainage district.

Under the record in this case, the men who own land along Line D were, of course, assessed for the original construction of said drainage district. The evidence shows that some work has been done in the district since this matter was called to the attention of the board; and that their land has been assessed for the same, being a part of the drainage district; and that all assessments made in the district for improvements in the future will be assessed over the whole district, and these parties will be compelled to pay their proportionate share thereof. It would seem to be little less than a rank injustice to give them nothing for what they have paid, and subject their lands to all future assessments in said district to aid in the relief of the other lands in the district from water, and at the same time refuse these parties any relief.

The board of supervisors, acting in a capacity somewhat similar to that of a trustee in this matter, owes the same duty to these lands as they do to any other lands in the district; and it is certainly apparent that a condition exists,

2. DRAINS: repair: mandamus not maintainable to control discretion.

calling on the board to give these lands along Line D relief in some way, instead of abandoning them, as was attempted. Boards of supervisors, like all other officers, cannot disregard the duties placed upon them by statute. For such disregarded duty, under the law as it now stands, when such disregard is willful, they are subject to removal from office. The question before us for determination, however, is rather a narrow one; and, as argued by counsel, is whether or not an action for mandamus can be successfully maintained, under these facts. In what we say herein we are not to be understood as holding that the appellees have no remedy for their difficulties; but, as said, the lone question is whether or not mandamus is the proper remedy.

Where officers have discretion, mandamus will lie to compel them to act, but not to control discretion. *Perry v. Board*

*of Supervisors of Clarke County,* 133 Iowa 281; *State v. Parker,* 147 Iowa 69; *Sweitzer v. Fisher,* 172 Iowa 266.

Section 4341 of the Code of 1897 reads as follows:

"The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust or station. Where discretion is left to the inferior tribunal or person, the mandamus can only compel it to act, but cannot control such discretion." (Sections 12440 and 12441 of the Code of 1924.)

Under this section, we have repeatedly held that, where a positive official duty is enjoined upon the officer, the remedy of mandamus would lie. *State v. Thomas,* 152 Iowa 500; *Benjamin v. District Township of Malaka,* 50 Iowa 648.

Again, we have held that, where the duty imposed involves the exercise of discretion based upon facts to be found by it, mandamus will not lie, however erroneous the conclusions reached. *Clark v. Board of Directors,* 24 Iowa 266; *Preston v. Board of Education,* 124 Iowa 355.

In the *Preston* case, supra, involving the right of a school board to charge tuition to a pupil on the claim that she was a nonresident, we said:

"But where the duty imposed upon the board or tribunal involves an exercise of discretion based upon facts to be found by it, mandamus will not lie, however erroneous the conclusion reached; and upon this all the authorities agree. * * * Without question, it was the right of the board in the instant case to determine the question of the residence of the plaintiff, as a condition precedent to her admission to the schools as a free pupil. The determination of this question did not depend alone upon the age of plaintiff. Of necessity, other facts were to be considered. Conceding now that the board reached an erroneous conclusion, it is clear that the remedy was by a review of the facts and the judgment predicated thereon."

In *Milwaukee Malt Ext. Co. v. Chicago, R. I. & P. R. Co.,* 73 Iowa 98, at 100, we quoted from High on Extraordinary Remedies, as follows:

"Stated in general terms, the principle is that mandamus

will lie to compel the performance of duties purely ministerial in their nature, and so clear and specific that no element of discretion is left in their performance; but that, as to all acts or duties necessarily calling for the exercise of judgment or discretion upon the part of the officer or body at whose hands their performance is required, mandamus will not lie."

In *Leonard v. Wakeman*, 120 Iowa 140, involving the question of whether the board of supervisors could be compelled to repair or reconstruct a county bridge that had fallen, we said, quoting from *State v. Morris*, 43 Iowa 192:

" 'The bridge has fallen down, so that the road is impassable until a new bridge is erected. The board of supervisors have acted upon the matter, and have refused to make any appropriation for the rebuilding of the bridge. They have exercised the discretion with which the law invests them, and this discretion it is not competent for the courts, through the writ of mandamus, to control. It would be a novelty if, after the board of supervisors have determined that the public interests do not require the erection of a bridge, the district court should, upon the application of a private individual, overrule that decision.' "

See, also, *Denison v. Watts*, 97 Iowa 633.

In *Vincent v. Ellis*, 116 Iowa 609, was involved the question of the construction of a statute which directed the county auditor to advertise and receive bids for the construction of the public improvement, and the statute provided: "He shall proceed to let the work upon each separate section to the lowest bidder." The complainant in that case claimed that he was the lowest bidder, and brought mandamus. After discussing the authorities quite exhaustively, we quoted from a New York case, as follows:

"It does not seem possible that the legislature intended to take from the supervisors all discretion as to the making of contracts for the people of the county. Suppose, from accident or design, it should happen there was but one bid, and that was for a grossly exorbitant price: could it be said that the board must, nevertheless, award the contract? Such construction would turn a statute intended for the protection of the public into an instrument of fraud and robbery."

Counsel for appellee herein concedes that, if there was any

discretion in this board relative to these matters, then mandamus does not lie. We are of the opinion that it was not the intention of the legislature to compel the board, under all circumstances and conditions that might arise, to keep a drainage system in repair. Conditions might arise which would make it impossible to repair; for the cost of repair or reconstruction might be such that it would be prohibitive. When these matters are presented to a board, or come before them in their usual course of business, it is their first duty to determine whether or not the facts are such that they demand action by the board. These facts must be determined by the board before they proceed in the matter; and we are of the notion that they have a discretion in determining whether or not the application for repairs or reconstruction is such that the board would be warranted in granting it. This must be so, from the very nature of the matter under consideration.

Another matter which we have considered as somewhat bearing on this proposition is the fact that, at the time this matter was before the district court, had the improvement been put in, it would have been paid for out of the general funds of the Drainage District No. 10; or if no funds existed, the cost would have been spread over the whole district. Since that time, however, Section 7561 of the Code of 1924 has gone into operation; and, if the improvement were now to be made, the total cost of this improvement would be assessed to the lands benefited by such specific tile line or lateral; and it would probably place a greater burden on these lands than they could bear.

We feel that this situation does not give rise to the occasion when it is proper to use the extraordinary remedy of mandamus. The ruling of the district court is, therefore, reversed.—*Reversed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.