CHESTER O. HOUGEN, appellant, v. ANDREW L. GEORGE et al., constituting STATE TAX COMMISSION and STATE BOARD OF REVIEW, appellees.

No. 50973.

(Reported in 120 N.W.2d 497)

MARCH 12, 1963.

Jacobsen & Jacobsen, of Cedar Falls, for appellant.

Evan Hultman, Attorney General, and George Murray, Special Assistant Attorney General, for appellees.

Herrick, Langdon, Sandblom & Belin; Leonard C. Abels, Anthony T. Renda, Leo E. Gross, Philip T. Riley, and Robert N. Merillat; and C. L. Becker, Assistant County Attorney for Polk County, all of Des Moines, for intervenor appellees.

PETERSON, J.—This is a mandamus action involving the powers and responsibilities of the Tax Commission of the State of Iowa, acting as a Board of Review. The trial court sustained a motion by defendants to dismiss the petition. Plaintiff appealed.

Plaintiff's petition consists of three divisions. His contentions are: 1. That a writ of mandamus should issue ordering defendants to reinstate and enforce adjustments of property values as provided in notices of October 17, 1961, sent to the auditors of 47 counties in the state. 2. That writ of mandamus should issue against defendants ordering a reduction of all taxable valuations in Black Hawk County equal to the average taxable value of all classes of property in all other counties of

the state. 3. That writ of mandamus should issue ordering defendants to adjust valuation of property in the several counties and cities of the state, reducing or adding to such valuations in such a manner that all values in the State of Iowa will be uniform and equal, as provided by chapters 427, 441 and 443 of the Code.

■ I. It is advisable that we give brief consideration to the meaning of mandamus, and what is involved in the issuance of a writ of mandamus. Section 661.1, Code of Iowa, 1962, is as follows: "Definition. The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station." Section 661.2 provides: "Discretion —exercise of. Where discretion is left to the inferior tribunal or person, the mandamus can only compel it to act, but cannot control such discretion."

The above quoted sections have been implemented and supported by several decisions of this court throughout our judicial history. Kinzer v. Directors of Independent Sch. Dist. of Marion, 129 Iowa 441, 105 N.W. 686, 3 L. R. A., N. S., 496, 6 Ann. Cas. 996; Valentine v. Independent Sch. Dist. of Casey, 191 Iowa 1100, 183 N.W. 434; Griebel v. Board of Supervisors, 200 Iowa 143, 202 N.W. 379; Miller v. Hanna, 221 Iowa 56, 265 N.W. 127; Charles City v. Ramsay, 199 Iowa 722, 202 N.W. 499; Riley v. Des Moines, 203 Iowa 1240, 212 N.W. 716.

The statutes of Iowa and the decisions of our court are similar to and supported by the statutes and decisions of many other states. This appears in a general statement in 55 C. J. S., Mandamus, section 133, page 220: "Except as the scope of the remedy of mandamus may have been broadened by statute [California seems to be the only state having a materially broadened statute], it is a rule of general application that mandamus will not lie to review or control the acts of public officers and boards in respect of matters as to which they are vested with discretion, or compel the boards or officers to act in [a] particular way; * * * Where public officials exercise their discretion, it has

been said that their conclusions, although disputable, are impregnable to mandamus."

II.   Since the instant case involves procedure in connection with the taxing system of our State, we will present a brief résumé of relevant matters. The case at bar pertains to assessment and valuation of property. Statutory provisions with reference thereto are largely contained in chapter 441, Code of Iowa, 1962. Provision is made for the selection of city assessors in cities having a population of ten thousand or more. The farm land, together with the property in towns and small cities, is assessed by a county assessor. The basis of assessment of property in Iowa appears in section 441.21: "Actual, assessed, and taxable value. All property subject to taxation shall be valued at its actual value which shall be entered opposite each item, and shall be assessed at sixty percent of such actual value. Such assessed value shall be taken and considered as the taxable value of such property upon which the levy shall be made. The actual value in such cases shall be one and two-thirds times the assessed value as shown by the assessment rolls and may be so determined and ascertained."

In addition to the work of the assessor, city and county Boards of Review are appointed. Either a taxpayer or a public entity having a complaint may appeal from the assessment made by an assessor to such Board of Review. If either party is aggrieved by the action of a Board of Review such party may appeal to the courts.

The personnel was different for many years, but it is now provided by statute that the State Tax Commission shall constitute the State Board of Review. The instant action pertains to the action and procedure of such Board of Review.

As preliminary procedure to action by the State Board of Review, section 441.45 provides that each county assessor and each city assessor shall, before the first Monday in July, prepare and transmit to the State Tax Commission an abstract of all real and personal property in the county or city and shall file a copy of such report with the county auditor. In substance the statute provides the report shall disclose the following: 1.

Number of acres of land and the aggregate taxable value of same. 2. Aggregate taxable value of real estate in each township, city and town in the county. 3. Aggregate taxable value of personal property. 4. Number and value of all animals, and aggregate taxable value of same.

The State Board of Review is directed by statute, according to section 441.47: "Adjusted valuations. The state board of review shall adjust the valuation of property in the several counties adding to or deducting from the valuation of each kind or class of property such percentage in each case as will bring the same to its taxable value as fixed in this chapter and chapters 427 to 443 inclusive. It shall also adjust the valuations as between each kind or class of property in any city assessed by a city assessor and each kind or class of property in the same county assessed by the county assessor."

III. In order to properly analyze the contentions made by plaintiff, as a basis for issuance of writ of mandamus, it becomes pertinent and necessary that we outline the facts leading to plaintiff's action. Since this case was decided on a motion to dismiss we are restricted to facts as shown in the three divisions of plaintiff's petition.

Plaintiff is a resident of Black Hawk County. He owns property in both Waterloo and Cedar Falls. He became dissatisfied with the Black Hawk County assessments as to both farm and city property. A hearing was held before the State Board of Review. Upon such hearing, the Board reduced the assessment on farms to the extent of 10%, and the assessment on city property to the extent of 3%. He was not satisfied with these reductions made by the Board and started this action.

In accordance with the provisions of section 428.4, real estate in Iowa shall be listed and reappraised every four years. This program was commenced by statutory provision in 1933 and has been followed each four years thereafter. The year 1961 was a regular reassessment year.

Section 441.46 provides the State Tax Commission at its meeting on the second Monday of July shall sit as a Board of Review. The Board shall review the abstracts of assessments

which have been prepared by city and county assessors and which have been certified to the State Tax Commission.

In 1961 fifty-one counties were promptly declared by the Board to be just, equitable and uniform on the basis of the reports filed. As to forty-seven counties the Board tentatively decided to notify the county auditor to ask the properly appointed county and city officials to appear before the Board of Review about their tax reports. Such action was taken by order of the Board entered on October 17, 1961. Under the statute it was necessary that each county be given ten days notice as to the tentative action. More than forty of the counties appeared at a hearing, and at a time assigned by the Board of Review to each of the counties. After hearing, the State Tax Commission, sitting as a State Board of Review, in November 1961 notified the county auditors of forty-five counties throughout the state that they could proceed with the makeup of the 1961 tax list as reported to the Board. Any contemplated and tentative adjustments were canceled in all counties with the exception of Black Hawk and one other county.

There are many factors taken into consideration by the State Board of Review in arriving at its conclusion as to uniform and equal assessment schedules for all counties and cities in the state. Some of the factors are the following: 1. In valuing agricultural land and buildings a consideration by the Board of a ten-year production of crops average. 2. A study and consideration of data and figures compiled by the Iowa Crop and Livestock Reporting Service for each county in the state. 3. The average capitalized value per acre in each county was determined from such data and figures. 4. Such value was compared with the reported average value of the land by the county assessors. 5. Average market value of land and buildings compiled from information released by Iowa State University at Ames. 6. Sales assessment ratio data as compared with the 1959 farm sales. 7. The United States census report as to agricultural lands and pursuits in the State of Iowa. 8. The average reported values for 1961 as compared with the adjusted values of land and buildings in 1957, 1953 and 1949. 9. Reports of field representatives of the property tax division for the past four years

in all counties. 10. Other factors of less importance were also taken into consideration.

The same study was made by the Board with reference to residential, commercial and industrial real property, but tailored to fit city business and residential property instead of farms.

After the State Board of Review had completed its hearings in 1961 it postponed further consideration of assessments in some cities and counties until 1965, which is the next year for reassessment. In many cities and counties, like Polk County and Des Moines for example, information was transmitted to the Board that the counties or cities had retained expert appraisal institutions or individuals for the purpose of securing an unbiased and neutral reappraisal of all property. Such scientific study and reappraisal can be used by the city or county assessor in arriving at assessed values. Statutory approval for the employment of technical and expert help to assist in valuation of property was authorized by section 441.50.

■ IV. It is pertinent that we consider the specific complaints made by plaintiff. The first matter of which he complains, and as to which he requested the District Court and now this court to issue a writ of mandamus, was that the State Board of Review should be ordered to reinstate and enforce adjustment of property values under its notice of October 17, 1961, to the forty-seven counties in the state.

Hearings were held. The situation as to assessments in the counties was questioned by the Board of Review on only a tentative basis. After the hearings the Board of Review made a decision as to each county and notified forty-five of the counties to proceed with their assessment as originally made. A change was made in Black Hawk County as heretofore shown. A change was also made in one other county. Polk County was in the process of securing a technical and scientific appraisal, and was permitted to proceed with the 1961 assessments as reported.

■■ Apparently plaintiff was not satisfied with the reductions as made in Black Hawk County. It was not for the trial court, nor is it for this court, to say what reductions, if any, should be made. This is a matter within the discretion of the Board and the courts cannot interfere with such discretion. The

judicial department of the state cannot order the Board of Review, by writ of mandamus, to hold other hearings unless fraud or dishonesty is present. None is alleged. If some counties and cities were considering scientific studies, or if there were some matters which could not be satisfactorily decided in 1961 it was logical that the Board postpone further proceedings until 1965, awaiting re-appraisal in such cities and counties. If the Board had refused to take any statutory action, or had neglected to do so for an undue length of time, it is possible there could be a basis for the issuance of a writ of mandamus. Such requirement would not be for the Board to act in a certain way, but simply to act.

V. Plaintiff's second contention is that the trial court should have issued, and we should now order the issuance of, a writ of mandamus against the State Board of Review ordering a reduction of all taxable valuations in Black Hawk County equal to the average taxable value of all classes of property in all other counties of the state. A reduction was made in Black Hawk County. The State Board of Review did take action. Again, it was not for the trial court, and it is not now for this court, to order the issuance of a writ of mandamus to control the details, work and decisions of the Board of Review. By definite statutory provision such decisions are for the Board; not for the courts.

VI. The third request of plaintiff is that this court order a writ of mandamus issued, requiring defendants to adjust valuation of property in the several counties and cities of the state, reducing or adding to the valuations such amounts as will result in uniform and equal assessments for all classes of property in the State of Iowa. The situation as to this request is similar to the requests heretofore considered. We cannot interfere in the internal procedure and workings of the Board of Review.

The statute with reference to assessment and valuation of property was very extensively amended in the Fifty-eighth General Assembly in 1959. It appears to this court that the statutes of Iowa were quite fully brought to date at that comparatively recent time.

VII. Plaintiff, who is an attorney, participated in the oral

argument before this court in the case at bar. In his oral argument he stated that he rested his case on the provisions and the decision in Pierce v. Green, 229 Iowa 22, 294 N.W. 237, 131 A. L. R. 335. The facts and circumstances of said case are as completely different from the case at bar as day is from night. The facts in the Pierce case are to the effect that the assessed value of public utilities had been placed on a basis of from 22.6% to 30.8% of the actual value of the utilities. The action of the Board of Review was alleged to be arbitrary, fraudulent, dishonest and illegal. Another distinguishing situation in the Pierce case was that demand had been made upon the Board of Review to correct the delinquency. The Board categorically refused to make any change or correction. The Board stated that for many years the assessment had been made on such inadequate basis and it was not going to change it.

On the basis of the facts as shown without dispute and on the basis of the refusal of the Board to act this court issued a writ of mandamus in the Pierce case ordering the Board in the future to make assessments in accordance with statutory provision and in accordance with actual value of the properties and not on the basis of a very modest percentage of such value.

No analogous situation exists in the instant case. No charge of arbitrary, fraudulent, dishonest or illegal action is made by plaintiff as against defendants. No charge is made that defendants failed to act to secure equal and uniform assessments as to various classes of utilities within the State. The charge is made that the Board did not act in the manner plaintiff desired and perhaps it did not act as quickly as plaintiff desired it should. Such questions, when there was no refusal to act, and no undue delay, are not for the courts to control.

The trial court properly sustained the motion to dismiss plaintiff's petition and its action is affirmed.—Affirmed.

All JUSTICES concur except THORNTON, J., who takes no part.

HAYS, J., not sitting.