**RUAN TRANSPORT CORPORATION,**
Appellant,

v.

**IOWA STATE COMMERCE COMMISSION**
and Bernard J. Martin, Frank B. Means
and Dick A. Witt, Members of said Com-
mission, and Donald J. Godwin, and Crav-
en Transport, Inc., Appellees.

No. 54091.

Supreme Court of Iowa.

Dec. 15, 1970.

Bradshaw, Fowler, Proctor & Fairgrave,
Des Moines, for appellant.

Leo J. Steffen, Jr., Commerce Counsel,
Daniel J. Fay, Asst. Commerce Counsel,
and Tesdell, Miller & Rydell, Des Moines,
for appellees.

LARSON, Justice.

Pursuant to an application jointly filed
by Donald J. Godwin and Craven Trans-
port, Inc. for the sale, transfer, lease, or
assignment of Godwin's certificate of con-
venience and necessity No. LC–22 to Cra-
ven Transport, Inc., a newly-formed cor-
poration, the Iowa State Commerce Com-
mission, in compliance with section 327A.14
of the Code, fixed hearing thereon at its
Des Moines office on January 10, 1967, and
caused official notice thereof to be pub-
lished in all 99 Iowa counties.

Written protests were filed by Dahlen Transport and Ruan Transport Corporation, and at the hearing before two of the commissioners seven protestants appeared in opposition to the transfer. Witnesses were heard and at the completion of the hearing the Commission on May 25, 1967, entered its decision and order designated as Docket No. DLC–285. It noted the application for transfer of Certificate LC–22 which authorizes the holder to operate between all points in Iowa as provided under chapter 327A, Code of 1966. It noted the protests and the testimony of Donald J. Godwin to the effect that he owns only one tractor and leases other needed equipment used in transporting petroleum products. It further noted the testimony of Gene Craven, who explained that Craven Transport, Inc. is a corporation of which he and his two brothers are officers, that another firm, the Craven Transport Company, d/b/a Craven Leasing Company, leased necessary equipment to Godwin at the time, and that drivers of this equpiment were being paid by the company on behalf of Mr. Godwin.

The Commission then found the transferee was equipped and financially able to provide the proposed service and approved the transfer of the carrier certificate. On June 20, 1967, a resolution to that effect was passed and Ruan Transport Corporation, plaintiff herein, petitioned for a writ of certiorari asking for annulment of the Commission's resolution on the ground that it does "not limit the transfer of Liquid Carrier Certificate No. LC–22 to those rights of the Transferor that were being actively exercised at the time of the transfer" and praying for an order so restricting the rights transferred.

On September 5, 1967, an order for writ to make return before September 20 in the Polk County court was entered and, pursuant to its issuance and service and the Commission's answer and the answer of Craven Transport, Inc., a stipulation was filed on July 9, 1968, as follows:

"It is stipulated by and between the parties hereto that on October 18, 1966, Craven Transport, Inc., Transferee, and Donald J. Godwin, Transferor, filed with the Iowa State Commerce Commission their application for the Commission's approval of the transfer of Liquid Carrier Certificate No. LC–22.

"Donald J. Godwin, Transferor, was the holder of Liquid Carrier Certificate No. LC–22. Liquid Carrier Certificate No. LC–22 is what is known as a grandfather permit under Chapter 327A. It authorizes transportation of liquid products between all points in the State of Iowa.

"Craven Transport, Inc., Transferee, is an Iowa corporation. Its corporate certificate was issued September 26, 1966. Gene Laverne Craven is the President of Craven Transport, Inc.; his brother, Cleo D. Craven, is the Vice President; and Theodore H. Craven, Jr., another brother, is the Secretary-Treasurer. They are also the Directors of Craven Transport, Inc.

"These three gentlemen are also the stockholders and officers of another corporation, Craven Transport Company, doing business as Craven Leasing Company. This corporation was organized on April 22, 1966. It was engaged in the business of leasing tractors and petroleum trailers to anyone desiring to lease such equipment. This corporation had leased equipment to the Transferor, Donald J. Godwin.

"At the time of the hearing on the application, Gene Laverne Craven was employed by MacMillan Oil Company, and had been for one year and nine or ten months as a truck driver hauling petroleum products in bulk. His brothers, Theodore H. and Cleo D. are also truck drivers for MacMillan Oil Company hauling liquid petroleum products in bulk. Cleo and Theodore had worked as truck drivers for seven and ten years respectively."

After hearing and due consideration of briefs subsequently submitted, the trial court on July 8, 1969, filed its Findings of

Fact and Conclusions of Law, and on July 25, 1969, dismissed the writ of certiorari and taxed the costs to plaintiff. It appealed. We affirm.

The questions presented by this appeal are: (1) Does section 327A.14, Code of Iowa 1966, prohibit the acquisition of the inactive rights of a liquid carrier certificate by a corporation when it appears that its officers, directors and stockholders are also the only officers and stockholders of another corporation which allegedly had previously effectuated control and management of a liquid carrier certificate in such a manner that that corporation and its officers were directly or indirectly engaged in the transportation for hire of liquid products in bulk? (2) Are the Commission's findings on the factual issues involved therein conclusive? (3) Does section 327A.14, Code of Iowa 1966, prohibit the acquisition of the inactive rights of a liquid carrier certificate by a corporation whose officers, directors, and stockholders are the same as those of a corporation engaged in leasing equipment used in the transportation of liquid products in bulk?

Consideration of the issues raised in this appeal involves primarily chapter 327A of the Code, and particularly section 327A.14 which provides certain rights for liquid transport carriers engaged in business between December 1956 and January 14, 1957. Certificate of convenience and necessity covering all points in this state were provided these applicants and are known as "grandfather" provisions. Section 327A.14 provides inter alia:

"No rights so granted may be sold, leased, transferred or assigned to any person engaged *directly or indirectly* in the transportation for hire of liquid products in bulk or freight in interstate commerce or in intrastate commerce, in this or any other state, or the District of Columbia, or to any person engaged in the leasing of equipment for such purposes, except such rights as are actively being exercised at the time of sale, lease, transfer or assignment: * * *" (Italics added.)

The same section then authorizes transfers of both active and inactive rights in this fashion:

"[P]rovided however, rights so granted may be sold, leased, transferred or assigned to any person who has not engaged *directly or indirectly* in the transportation for hire of liquid products in bulk or freight in interstate or intrastate commerce prior to the date of such transfer, or to any person who has not prior to such date engaged in the leasing of equipment for such purpose, and on the hearing it shall not be necessary for the commission to find that such sale, lease, transfer or assignment is necessary in the public interest." (Italics added.)

The act goes on to provide in subsection 1 that before the Commission approves a transfer it must find the conditions of section 327A.14 have been or will be fulfilled. This follows:

"2. Except as otherwise provided in subsection one (1), it shall be unlawful for any person to accomplish or effectuate, or to participate in accomplishing or effectuating, the control or management in a common interest of any two or more persons engaged in the transportation for hire of liquid products in bulk or freight or of one or more persons so engaged, however such result is attained, whether *directly or indirectly,* by use of common directors, officers or stockholders, holding or investment company or companies, a voting trust or trusts, or in any other manner whatsoever." (Italics added.)

"Person" is defined in the chapter to include corporations as well as individuals. Code, 1966, § 327A.1(2).

Propositions relied upon for affirmance were that by amendment to section 327A.14 the 58th General Assembly provided for the transfer of certificates to newly-created corporations without a diminution of operating rights, that in the absence of an allegation and proof of fraud or illegality the acts of one corporation will not be attributed or imputed to another corporation having common officers and directors; and

that unification or acquisition of control should not be an issue in this matter.

I. Of some importance is the explanation attached to H. F. 363 which was enacted by the 58th General Assembly changing the law enacted by the 57th General Assembly relating to transfer of liquid carrier certificates under chapter 327A of the Code by allowing transfers of "grandfather" certificates in certain cases without diminution of rights and restricting them in certain other cases. This explanation stated:

"An individual holding rights which he acquired under the Grandfather provisions of Section 327A.14 of the Code cannot take in a partner or incorporate without losing his grandfather rights. Neither can his business be left to members of his family on his death. A man cannot take his son into business with him.

"This bill will relax the provisions to permit a man to take in a partner, to leave his business to his family, or to incorporate without losing any of the rights which he acquired under the grandfather provisions. At the same time it provides safeguards against monopolies through mergers, consolidations, stock transfers and trusts by permitting a transfer to persons engaged in the business of transporting liquid products in bulk only of rights being actively exercised. The present provisions discriminate against a man who had not incorporated at the time he acquired his rights. This bill adopts the principles embodied in federal law and interstate commerce commission rules and regulations."

Thus, the clearly-expressed intent behind the amendment was to restrict the rights which may be transferred to a person who has previously engaged directly or indirectly in the transportation for hire of liquid products business, or who has engaged in the business of leasing equipment for such purpose, to those rights actively being exercised at the time of the transfer, and to allow the transfer of all rights, active and inactive, to a person who has not prior to the date of transfer been engaged directly or indirectly in such transport business or in the leasing of equipment business.

In its Findings of Fact the trial court found inter alia that (1) prior to January 10, 1967, Donald J. Godwin held a "grandfather" certificate LC–22 which gave him authority "from all points in Iowa to all points in Iowa"; (2) Craven Transport Company, an Iowa corporation, does business as Craven Leasing Company, that its officers, directors and stockholders are Gene Craven, Cleo Craven and Theodore Craven, that this corporation has no operating authority as a liquid carrier, but is engaged in leasing tractors and trailers to various authorized carriers, including Godwin; (3) Craven Transport, Inc., incorporated on September 26, 1966, has the same directors, officers and stockholders as Craven Transport Company, has never been in the liquid carrier business, and (4) the Commission, after due notice and hearing, has determined that Certificate LC–22 can be transferred from Godwin to Craven Transport, Inc. under the provisions of section 327A.14 of the Code and the transferee may thus acquire both the active and inactive rights under that certificate.

The court concluded (1) it could review the decision of the Iowa State Commerce Commission *only* to determine whether it acted in excess of its jurisdiction or otherwise illegally and that the Commission's findings of fact were binding on it if supported by competent and substantial evidence; (2) the issue for determination by the appeal is whether the fact that the officers, directors, and stockholders of Craven Transport Company and Craven Transport, Inc. are the same brings Craven Transport, Inc. within the prohibition of the statute as to the *inactive* rights involved as a matter of law; (3) the fact that the officers of one corporation are also the officers of another corporation does not make the corporations the same as a matter of law, and neither does it make the acts of one of them the acts of the other, that the separation of corporate entity will be dis-

regarded only where used as a cloak for fraud or illegality; (4) the Iowa State Commerce Commission properly exercised its administrative power and jurisdiction in approving this transfer, and there was no adequate showing that the Commission exceeded its jurisdiction, acted illegally, or made findings unsupported by record evidence.

There is no dispute as to the rights of Godwin as possessor of the LC–22 permit or as to the extent of that authority in his hands, even though at the time of the transfer to Craven Transport, Inc. his shipment records showed only originated shipments from six counties and served destinations to twenty-two counties. Nor is it disputed that at the time of transfer Godwin was operating one tractor and three trailers which were leased from Craven Transport Company, d/b/a Craven Leasing Company. It appeared Godwin was in. financial trouble due to domestic difficulties, that he employed one driver until April 1966 when the leasing company provided the driver and that after his domestic trouble Godwin's records were kept at the home of Gene or Cleo Craven.

It also appeared the invoices on shipments made under Permit LC–22 contained the words "Accounts payable, Craven Transport Company, 4745 Northeast 3rd, Des Moines, Iowa." Shippers thereafter made checks payable to Craven Transport Company, which Godwin explained was arranged to secure the leasing costs and avoid "a garnishment of all my wages and income off of the trucks."

It further appears on September 26, 1966, the Craven brothers incorporated Craven Transport, Inc. and on the same date entered into a contract with Donald J. Godwin to purchase Permit No. LC–22 with certain equipment owned by Godwin. Application was filed on October 17, 1966, for Commission approval of the transfer.

It is not disputed that the directors and officers of Craven Transport Company engaged in leasing equipment for transporting petroleum products, and Craven Transport, Inc., a newly-formed corporation, are the same.

It also appears that after the attachment Godwin continued to lease equipment from the Craven Transport Company and serviced his customers. In his crippled financial condition it appeared he could not continue indefinitely and then he offered the sale of his permit to the Cravens. A new corporation was formed and the certificate was purchased by it.

II. In proceedings of this nature initiated before the State Commerce Commission we have held that court's review on issues of fact is not de novo. We have said it is only when the facts are so clear and undisputed that minds of reasonable men cannot differ as to their import that pure questions of law are resolved which are proper for judicial review. Circle Express Co. v. State Commerce Commission, 249 Iowa 651, 86 N.W.2d 888, 893; Lineberger v. Bagley, 231 Iowa 937, 2 N.W.2d 305, and cases cited therein.

Jurisdiction to review by certiorari in matters of this kind is not questioned here and, although there are cases which question the court's jurisdiction to entertain the action when administrative remedies are provided and no judicial review is provided in the law, we have generally held where there is no plain, speedy and adequate remedy otherwise provided, we will undertake a review of matters which allege prior arbitrary and illegal actions by administrative bodies. In Appanoose Co. R. Tex. Asso. v. Iowa State Tax Comm., Iowa, 158 N.W.2d 176, 182, we quoted with approval from 2 Am.Jur.2d, Administrative Law, § 707, p. 606: "The fact that a statute does not provide for judicial review of action of an administrative agency does not preclude the courts from providing such review as is necessary or required, and the courts will, in some appropriate proceeding, provide such review." Also see Pierce v. Green, 229 Iowa 22, 294 N.W. 237, 131 A.L.R. 335,

and Hougen v. George, 254 Iowa 1055, 120 N.W.2d 497. However, in the absence of fraud, or other misconduct, or the arbitrary exercise of power equivalent thereto, the factual determination of the administrative authority must be accepted.

In the case of B. F. Goodrich Co. v. Northwest Industries and I.C.C., cited in 1970 Federal Carrier Cases, § 82,162 the court discusses the jurisdictional issue and the respect the court must give to the administrative rulings in the I.C.C. decisions. The United States District Court of Delaware therein held the determination of "control" was an administrative matter for the I.C.C. It stated "control" as used in sections 5(2) and 5(4) of the Interstate Commerce Act does not have an inflexible meaning requiring no expertise to interpret it; rather, the determination of "control" in a particular case as a practical concept is left to the Interstate Commerce Commission, the agency charged with enforcement. It said "the doctrine of primary administrative jurisdiction requires a court to respect the administrative ruling implicit in the I.C.C.'s decisions." That decision is applicable here, and the trial court rightfully accepted the Commission's determination that under the record before it control and management of Godwin's certificate or business was not sufficiently shown to require a finding that Craven Transport Company or the Craven brothers had been directly or indirectly engaged in liquid carrier business prior to the transfer involved herein.

III. As we understand it, appellant's principal contention here is that the record does require a finding (1) that the Craven brothers in April 1966 incorporated Craven Transport Company to engage in leasing equipment to persons operating transportation for hire of liquid products in bulk, and (2) that due to Godwin's financial and domestic difficulties the brothers and the company took over the management and control of Godwin's business operated under the LC–22 permit and were thus directly or indirectly engaged in the transportation for hire of liquid products prior to the transfer of the certificate from Godwin.

This was the objector's contention made before the Commission, and all evidence relating to that claim was presented to and considered by the Commission. It is not disputed that the circumstances surrounding these transactions were clearly and fully revealed and nothing concerning the relationship between Godwin and the Craven Transport Company and its officers was concealed.

Appellant's theory of unlawful effectuation of control of the Godwin permit was premised upon the assumption that the arrangement to circumvent the attachment of Godwin's property, whereby payments for Godwin's transportation services were made through Craven Transport Company, were really payments by Craven Transport Company for the use of Godwin's rights. Although the evidence might support such a finding, the Commission was satisfied there was no such arrangement, and found there was in fact no management or control of Godwin's business or of Permit LC–22 exercised by the brothers of the Craven Transport Company and that the aid given Godwin was to obtain revenue for the rental of the equipment and driver leased to him and to keep him in business as an active customer. As heretofore indicated, the evidence supports that Commission determination and we should accept it here.

Of course, each case of this nature arising from an application to transfer must stand on its own record.

Regardless of our restricted review, we find the record here supports the finding that Godwin alone had conducted operations within the scope of his certificate and had rendered services thereunder on a scale commensurate with his personal and financial situation. We are satisfied the record shows that prior to the transfer, Craven Transport Company was not engaged in transporting liquids in the state,

that it had no right to do so, that only Godwin held such right under a valid permit, and that there was no consolidation of rights within the meaning of the statutes involved. If the "Company" had exercised such authority a different case would be presented and on that issue we do not pass.

IV. The statutory restrictions mention two classes of persons in the industry: those engaged in transporting liquids and those engaged in leasing equipment. The restrictions contain the words "directly or indirectly" three times. But each time those words refer to persons engaged in transporting and not to persons engaged in leasing. First, inactive rights cannot be transferred to any person *directly or indirectly* engaged in the transportation for hire of liquid products, but as to the other class the restriction merely reads, "to any person engaged in the leasing of equipment". Second, transfers of all rights are authorized to persons "not engaged *directly or indirectly* in the transportation for hire of liquid products", but the italicized words are not used regarding transfers of all rights to persons not engaged in leasing. Third, the proscription in subsection 2 on gaining common control, *"directly or indirectly",* applies to persons engaged in transportation, and persons engaged in leasing are not even mentioned. (Italics added in each instance.)

Looking to the explanation on the bill, a similar situation is found: the bill is said to safeguard against monopolies "by permitting a transfer to persons engaged in the business of transporting liquid products in bulk only of rights being actively exercised." Persons engaged in leasing are not mentioned.

The legislature apparently intended the restrictions to be tighter on transfers to persons engaged in transporting than to persons engaged in leasing. Craven Transport Company was engaged in leasing and the Commission can say that Craven Transport, Inc., is another "person" who can receive all of Godwin's rights.

V. Attention was directed to the fact that no complaint was made prior to the hearing on the transfer as to the legality of the relationship of Godwin and Craven Transport Company which would require an investigation and hearing under section 327A.14(2) and (3). Appellees, therefore, contend the hearing before the Commission was not accusatory or directed to any illegal act on the part of the transferee and the issue of unification or acquisition of control, referred to in those subsections, had no place in this lawsuit. We agree. Obviously, the procedure under those subsections and the findings required would be different. They are not applicable to this hearing to approve transfers. Furthermore, the claimed affiliation of the brothers or Craven Transport Company and Donald J. Godwin in such a manner as to gain control or management of the liquid carrier certificate No. LC–22, as we have noted, was factually decided against appellant. There is no merit in this assignment.

VI. We conclude that Craven Transport, Inc., had not engaged in the liquid transport business within the meaning of the statute prior to the sale and transfer of the Godwin certificate LC–22 to it, and that the Commission's determination on that issue was sufficiently supported by the record to sustain an approval by the Commission of the transfer of active and inactive rights to the transferee.

Affirmed.

All Justices concur.