### SCHWARZ FARM CORPORATION, Appellant,

v.

### BOARD of SUPERVISORS of HAMILTON COUNTY, Iowa, and Drainage District No. 71, Appellees.

#### No. 54662.

Supreme Court of Iowa.

April 13, 1972.

Herrick, Langdon, Belin & Harris, Des Moines, for appellant.

Hamilton & Schill, Fort Dodge, and Alan Loth, San Jose, Cal., for appellees.

LeGRAND, Justice.

This appeal involves a drainage problem which has been before the courts of Hamilton County, off and on, since 1960. It is necessary to review this past litigation before reaching the specific matters critical to our decision.

I. By several transactions in 1955 and 1956, Emil Schwarz, plaintiff's predecessor in title, purchased 1600 acres of land in Hamilton County comprising part of Drainage District No. 71 (hereinafter called District 71), which had been established in 1910 under what is now chapter 455, The Code. Later he conveyed his interest to plaintiff, a corporation which he organized and controls.

Over the years the ditch became badly impaired by the growth of trees and vegetation and by large deposits of silt. Mr. Schwarz several times requested the Board of Supervisors to clean it out and restore it to its former efficiency. His pleas went unheeded even though the ditch had gone virtually untouched for 50 years. In 1960, he brought a mandamus suit against the Board to secure such action, relying on the rule that a drainage district, once established, is under the supervision of the Board of Supervisors, who may be compelled to maintain and repair it. Section 455.135, The Code; Wise v. Board of Supervisors, 242 Iowa 870, 873, 48 N.W.2d 247, 248 (1951); Voogd v. Joint Drainage Districts, 188 N.W.2d 387, 391 (Iowa 1971).

That suit resulted in a decree, the pertinent parts of which are as follows:

"The Board of Supervisors of Hamilton County, Iowa, are hereby peremptorily ordered, commanded and required forthwith to take all appropriate steps to open the ditch in Drainage District No. 71 and the laterals thereto * * * and to order all things appropriate * * * in order to restore the said Drainage District No. 71 to its original efficiency and capacity and to assess the proper costs and expenses thereof against the lands in said district as provided by law; and a writ of mandamus may issue herein on plaintiff's demand."

Rather than being the end of the problem, this was only the beginning. Some drainage improvement work was contracted for and completed in June 1964. At that time the lands in District 71 were assessed in the amount of $160,018.00 to pay for the project. Objections to the assessment were made by various landowners and several appeals to the district court were taken.

While these appeals—later dismissed—were pending, another mandamus suit was brought by owners of land in District 71 to compel the Board to assess not only those owning land within the district but also the owners of land lying in other drainage districts as well as owners of unorganized land not within any district. It was claimed the entire watershed was benefited and that owners of all land within the watershed should be assessed rather than only those within District 71.

This second mandamus action resulted in the issuance of a writ of mandamus based in part upon the following findings:

"The court finds that said drainage district [71] encompasses some 10,420 acres of land and that the watershed of said

drainage district actually consists of approximately 40,000 acres of land all situated and located in Hamilton County, Iowa.

"\* \* \* The court further finds that the Board appointed commissioners to assess benefits and that the assessment was made against the property owners in Drainage District 71 only. In this connection the court finds that the Board of Supervisors of Hamilton County, Iowa, did not consider the assessment of the benefits to any tributary districts or outlying land. \* \* \*

"The court further finds that the drainage engineer for Hamilton County, Iowa, \* \* \* who testified in this action that the watershed of this district was approximately 40,000 acres and said watershed drained either directly or indirectly into Drainage District No. 71 stated that the assessments made were inequitable and that District 71 was a common outlet for this watershed of approximately 40,000 acres. \* \* \* The Board's appointed engineer \* \* \* testified that the whole watershed derives a benefit from the drainage ditch in District 71, and therefore will derive a benefit from the cleanout of the same. *It, therefore, follows that it is mandatory upon the Board to assess the tributary districts and unorganized lands within said watershed as the same are benefited by the same improvement and it is so ordered."* (Emphasis supplied.)

The Board demurred at following the court's order and instead attempted various procedures aimed at bringing within the drainage district property lying in the watershed but beyond the limits of District 71. These endeavors included an unsuccessful effort in 1965 to form a new and enlarged drainage district; an attempt, also unsuccessful, to annex the unorganized land in the watershed to District 71; and a reclassification of the earlier assessments, which, upon objection, was later set aside by the Board itself.

Eventually, after a citation for contempt alleging the board wilfully refused to carry out the court's 1964 writ, the final assessments to pay for the District 71 project were made. The cost by this time had zoomed to $237,434.19. Of this amount $192,191.31 was assessed against property lying within District 71; $28,453.80 for land in other drainage districts; and the balance of $16,789.01 against unorganized land not within any drainage district.

Plaintiff's share of the assessment was $73,000.00.

After plaintiff's objections to its assessment had been overruled, it appealed to the district court as permitted by section 455.92, The Code. The owners of the land lying outside District 71, both that in other districts and unorganized land, also appealed their assessments by separate suits, which were consolidated for trial. We refer to these latter appeals as the Wahrenbrock case.

The Wahrenbrock trial resulted in a decree declaring the assessments against those objectors void on two grounds. First, the trial court held the Board could assess only land lying within District 71 because of the provisions in the 1960 mandamus decree; and second, the trial court found the evidence failed to show any benefit accruing to the property of the Wahrenbrock objectors. No appeal was taken from that decree.

The trial court's findings in Wahrenbrock—incidentally both that case and the present one were tried to the same judge— were incorporated in the decree in the case now before us as "explanatory of those events" leading up to the present controversy.

■ Perhaps this would be a proper place to point out that setting aside the Wahrenbrock assessments, even though it might lead to a deficiency assessment against other land owners under section 455.59, The Code, does not invalidate the other assessments under the circumstances

existing here. The trial court so held and we agree. Brill v. Board of Supervisors, 195 Iowa 132, 135, 136, 191 N.W. 859, 861 (1923).

II. This brings us to the issue upon which the parties are in violent disagreement and to which they devoted most of their briefs and arguments—the impact on this appeal of the 1960 and 1964 mandamus actions. Plaintiff says the 1964 mandamus action settles the case in its favor; defendant, on the other hand, points to the 1960 decree as conclusive on the manner in which assessments for the drainage improvement were to be made and enforced.

We cannot agree with either theory, and we set out our own conclusions as to the effect of those earlier district court decisions.

█ It must be remembered both were actions in mandamus brought under sections 661.1 and 661.2, The Code. The purpose of mandamus is limited to compelling a person, board, or tribunal to act (or not to act) in a matter where the law imposes an obligation to do so. 55 C.J.S. Mandamus § 133, page 220; Hougen v. George, 254 Iowa 1055, 1057, 120 N.W.2d 497, 501 (1963) and citations.

The 1960 mandamus decree ordered the Board of Supervisors to clean out and open the ditch in District 71. This was the statutory duty under chapter 455 which the Board had refused to perform.

Considerable point is made that this 1960 decree limited the Board to act under a particular provision of chapter 455 instead of other sections authorizing more extensive repairs and improvements. See sections 455.135 and 455.148.

We do not so interpret the 1960 decree at all. All it did was order the opening of the ditch. References to specific sections did not purport to restrict the discretion which the law reposed in the Board of Supervisors to proceed as they thought best, as long as they performed their statutory duty.

We believe the 1960 decree did no more than this; and, indeed, it is doubtful if it *could* have done more as the case was presented to the court. Section 661.2, The Code; Hougen v. George, supra; Crews v. Collins, 252 Iowa 863, 869, 109 N.W.2d 235, 238 (1961); Hirsch v. City of Muscatine, 233 Iowa 590, 595, 10 N.W.2d 71, 73 (1943); Griebel v. Board of Supervisors, 200 Iowa 143, 146, 147, 202 N.W. 379, 380 (1925).

█ We hold the 1960 decree has no significance in resolving the matters now confronting us.

The 1964 mandamus suit poses entirely different problems.

The 1964 action was brought by owners of land within District 71 objecting that the Board had not assessed any land outside the district for benefits accruing from the opening of the ditch. They claimed land lying in other drainage districts and unorganized land not in any district should bear its share of the expense. The trial court so held in that case.

There was no appeal from this holding, and plaintiff now argues it is res judicata as to the liability of all land within the watershed—including unorganized land not in any drainage district—to bear a share of the cost.

While we disagree that the 1964 decree did all that plaintiff claims for it and point out there is no statutory authority in any event to assess the *unorganized* land, we assume for the sake of our discussion that such power exists and that the 1964 decision is binding on the parties. (The trial court based its holding of invalidity partially on the provisions of the 1960 decree. We do not agree with that conclusion.)

However, even if we concede the validity of the 1964 mandamus action and its binding effect here, plaintiff's position is not improved by that assumption. The trial court in Wahrenbrock also held the assessments invalid on a second ground—the land received no benefit from the improve-

ment. We see no way plaintiff can escape that determination.

The 1964 decree ordered the land outside District 71 should be assessed "as it is shown to be benefited." Later when the assessments were levied, Wahrenbrock appealed claiming, among other things, no benefit resulted from the drainage improvements. The trial court agreed and stated this as a second ground for striking down those assessments.

The Wahrenbrock decree, from which there was no appeal, is final on the invalidity of those assessments. Certainly it cannot be argued *that* issue had been previously litigated and decided, because the assessments had not been made at the time. We have held no objections may be made and no appeal taken until a final assessment has been levied. Farmers Drainage District, et al, v. Monona-Harrison Drainage District, 246 Iowa 285, 290, 291, 67 N.W.2d 445, 449 (1954).

Until the Wahrenbrock appeal, the owners of land outside District 71 had no opportunity to contest the various holdings affecting this matter. They were not parties to these actions nor in privity with anyone who was. It cannot be urged that the Board acted for them under section 455.98 for several reasons. First, the Wahrenbrock group are "adversary parties" under the circumstances existing here; and second, they are not parties within the district. On either score they are excluded from those persons for whom the Board may act under the statute.

■ We conclude there can be no successful claim of res judicata—or issue preclusion—which would prohibit the trial court from setting aside the Wahrenbrock assessments on an appeal under section 455.92.

■ One who has had no opportunity to contest an issue is not bound by an adverse ruling in another suit. He is entitled to his day in court. Trustees of Green Bay Levee and Drainage District No. 2, Lee County v. Alexander, et al., 252 Iowa 801, 806, 807, 108 N.W.2d 593, 597 (Iowa 1961). See also our recent discussion on res judicata and issue preclusion in Goolsby v. Derby, 189 N.W.2d 909 (Iowa 1971).

We have given the questions raised by the long and bitter history of this case careful consideration because the parties to this appeal place great importance on them. We believe both sides have over emphasized the prior litigation. They lean heavily on support which they read into the decisions, but which we fail to find there.

III. This brings us to the real issue raised by plaintiff, the claim its assessment was unfair, illegal, and excessive.

■ Plaintiff has the burden of proving the assessment was excessive. We do not believe it has done so. An assessment based on the commissioners' report and confirmed by the district court carries with it a strong presumption of correctness and must stand unless the objecting landowner shows it resulted from fraud, prejudice, gross error or evident mistake. Wilkinson v. Heald, 256 Iowa 478, 484, 127 N.W.2d 622, 625 (1964); Martin v. Board of Supervisors, 251 Iowa 579, 583, 584, 100 N.W.2d 652, 655 (1960); Johnson v. Monona-Harrison Drainage District, 246 Iowa 537, 547, 68 N.W.2d 517, 523 (1955); Cordes v. Board of Supervisors, 197 Iowa 136, 140, 196 N.W. 997, 999 (1924); Rogers v. Board of Supervisors, 195 Iowa 1, 4, 5, 189 N.W. 950, 951, 952 (1923).

These authorities also hold the objector must prove not only that his assessment is unfair but also what amount is proper.

■ We believe the trial court correctly held plaintiff failed to carry its burden on both counts.

Plaintiff undoubtedly wonders why this same strong presumption did not work to his advantage when the legality of the assessments against other land was under discussion in Division I of this opinion.

It did; but there the trial court found it had been overcome and found against the validity of the assessments in a decree which is now final.

Plaintiff's land lies at the very bottom of the watershed. It was all classified by the commissioners as swamp land. All the repair work was done within District 71, none on land outside the district.

The trial court made extensive findings from which we repeat and adopt the following:

"Benefit commissioners were appointed July 14, 1967, to reclassify and apportion benefits to all the land in the watershed. * * *

"They classified the whole watershed as if it were one district * * *. Every 40 acre tract was visited and examined. A topographic map was used but no surveying was done. The tracts were classified according to their condition just prior to and at the time of the repair involved. Each 40 acres was first classified as to wetness. A percentage was assigned to each fractional part as 'wet', 'low', 'high' or 'swamp'. (All of plaintiff's land was 'swamp'.) A 'wet factor' for each tract resulted. A 'proximity factor' based upon elevation and distance from the improvement involved was applied to each tract resulting in 'units of benefit' from the particular drain involved. The amount to be assessed attributable to the main ditch and each branch was apportioned.

> *   *   *   *   *   *
"The issue is whether the assessments on plaintiff's land should be annulled or reduced for any reason raised. * * * Insofar as other lands in the district are concerned the only evidence tending to support plaintiff's claim is Mr. Schwarz's broad general statement that land 'lower' than some of his was assessed lower than some of his 'higher' land. He termed the assessment 'absolutely unfair' and 'ridiculous' and said he has been mis-

treated from the beginning because he is an 'outsider'. No evidence was offered to show specific comparable tracts elsewhere in the district assessed for less than his lands.

"The manner of assessment for the work done on the laterals seems fair and in accordance with the intent of section 455.48, Iowa Code. A specific comparison of the resulting assessments in the abortive 1962 effort and the present one doesn't reveal any significant or substantial difference in either classification or apportionment of benefits. Substantially more money must be raised now. There is insufficient basis for judicial interference.

"Mr. Schwarz's claim that he is being treated unfairly is unjustified. His predecessors in title had the same problem he is having. One who tries to farm a drained lake bed is bound to have problems. The same waters that fed the lake continue to come onto his land. This hazard appears to have been reflected in the 1956 purchase price. His land is admittedly subject to the 'swamp' description.

■ As to plaintiff's complaint of double assessment because its land was taxed not only for improvements to the main ditch but also for laterals on its land feeding into the ditch, plaintiff enjoyed a separate benefit for each assessment made and is not paying twice for a single benefit. The separate classification of and assessment for lateral benefits is authorized under section 455.48, The Code. See also Kerr v. Chilton, 249 Iowa 1159, 1163–1165, 91 N.W.2d 579, 581–583 (1958) and citations.

As already stated, we hold plaintiff has not met its burden of proving either that its assessment is illegal or of showing the amount it should properly pay for the improvements to District 71.

IV. Our decision upholding plaintiff's present assessment disposes of the only is-

sue raised on this appeal. However, there is a related matter we should discuss—one that runs through this whole case as well as through the Wahrenbrock matter. The trial court mentioned it in both decrees, and the parties devote considerable time to it in their briefs.

It is this: What about the unhappy prospect plaintiff now faces with respect to a deficiency assessment under section 455.59? It is one thing to say, as we have, that plaintiff failed to show the present assessment is excessive or otherwise illegal. It is quite another to hold, as the trial court at least tacitly did, that plaintiff must pay a sizeable deficiency because the assessments against *all* land outside Drainage District 71 have purportedly been invalidated.

At this point plaintiff must feel justice is indeed a fickle friend. Not only has the seeming victory of the 1964 mandamus decree been snatched away, but plaintiff must now be prepared to pay an additional assessment besides—all without an opportunity to establish that the land in the upper drainage districts was benefited and should pay a fair share of the improvement costs.

This is not before us on the present appeal, which challenges only the assessment already made; nor, indeed, do we agree that the Wahrenbrock decree settled it as far as plaintiff is concerned despite the apparent intention that it do so. Plaintiff tried unsuccessfully to consolidate his case and the Wahrenbrock cases for trial. His application to do so was denied. But now the trial court has in effect "consolidated" them by the manner in which the decree here is made dependent on the Wahrenbrock result.

The Wahrenbrock decree is, of course, final as to those parties since no appeal was taken from it; but it should not bind this plaintiff on an issue it has never had an opportunity to litigate. Just as we held in Division I as to the Wahrenbrock plaintiffs, this plaintiff, too, is entitled to its day in court.

Plaintiff has failed to upset the original assessment. But there is strong evidence in this record from which it *might* have been found—if that had been an issue—the land in the upper drainage districts should help defray the cost of the improvements. Perhaps plaintiff can prove such land was benefited, perhaps not; but it should not be shut off without a hearing.

We hold therefore that if plaintiff is subjected to a deficiency assessment, as now seems inescapable, nothing in this opinion nor in the trial court's decree, and nothing in the Wahrenbrock decree, shall preclude plaintiff from showing, if it can do so by competent evidence, benefits accrued from this improvement to land in the upper drainage districts and to thereby reduce or eliminate any deficiency assessment against its own land under section 455.59. We add, perhaps unnecessarily, that the unorganized land is not subject to assessment in any event.

To the extent the trial court's decree might be construed to hold otherwise, it is hereby modified. As to the propriety of the present assessment against plaintiff it is affiirmed.

Modified and affirmed.

All Justices concur except HARRIS, J., who takes no part.