LEE R. BOYD, Appellant, v. BOARD OF SUPERVISORS OF PALO ALTO COUNTY et al., Appellees.

J. G. MYERLY, Appellant, v. BOARD OF SUPERVISORS OF PALO ALTO COUNTY et al., Appellees.

DRAINS:  Prior Drainage—Adaptability for Lateral Tiling.  In de-termining assessments of benefits, due consideration should be

given (a) to the system of drainage already provided by the landowner, (b) to the relative amount of land actually drained by the new improvement, and (c) to the lateral drainage facilities afforded by the ditch. Evidence reviewed, and held to show an excessive assessment.

*Appeal from Palo Alto District Court.*—D. F. Coyle, Judge.

December 19, 1919.

Appeal from a drainage assessment.—*Modified and affirmed.*

*Daniel Kelly* and *J. G. Myerly,* for appellants.

*Davidson & Burt,* for appellees.

Stevens, J.—The plaintiff Boyd is the owner of the southeast quarter of Section 2, the northeast quarter of Section 11, and the northwest quarter of Section 12, all in Township 95, Range 33, and the plaintiff Myerly of the south half of the northeast quarter and the southeast quarter of Section 16, Township 95, Range 32, Palo Alto County, Iowa. Drainage District No. 81, in which the above land is situated, contains 22,000 acres, lying on both sides of the Des Moines River, a very tortuous stream in Palo Alto County. A large percentage of the 22,000 acres, prior to the construction of the improvement in question, was subject to periodical overflows, and unsuitable for cultivation, and was used largely for hay and pasturage purposes. The improvement was designed to provide a straight channel, in place of the tortuous one. The new channel is 22 miles in length; whereas, the course of the river through the district as it originally ran was about 66 miles. The south half and the northwest quarter of the southeast quarter of Section 16 of the Myerly land is situated in another drainage district, known as District No. 21, and the Boyd land, within another proposed district, known as District No. 41. The former improvement, at the time of the trial, was in

process of construction; whereas, the latter, as we understand the record, had not yet been established by the board of supervisors. The land in the district was classified as follows: Swamp, 100 per cent; wet, 80 per cent; dry, 40 per cent; high, 10 per cent. The 100 per cent land was assessed at $6.30 per acre. The classification of the lands for assessment was made by three wholly disinterested parties, one of whom was a drainage engineer, of considerable experience, but a stranger to the lands in the district. The cases were consolidated in the court below, and tried together, and are so presented in this court. A part, or all, of the Boyd land is in cultivation, and the principal claim of counsel as to this land is that it was, at the time the district was established, fully protected from overflow by a dike about one mile and a half in length, erected and maintained by appellant along the river; whereas, the claim of Myerly is that a portion of his land is drained by the ditch in District No. 21, which traverses the south half of the northeast quarter of Section 16 from the northwest to the southeast corner; that same is not subject to overflow, is good hay land, and not seriously affected by water from the river. Except for the dike which protects the Boyd land, it would, doubtless, be practically all overflowed when the river is high. The dike has not entirely eliminated the overflow from all of this land, as the water appears to flow around the north end of the dike onto a part thereof. It is also subject to periodical overflow from surface water coming from the west. It is the claim of Boyd that the only water causing damage to his land comes from the north and west, and not from the river. Some years ago, a ditch known as the Allen ditch, originating in Section 2, and extending south and southeast, was constructed by mutual agreement of Boyd and others owning land in that vicinity, to take care of this water; but this ditch has proven inadequate for that purpose. All of the Boyd land and the south

80 and the northwest quarter of the southeast quarter of Section 16 were classified as 100 per cent land. The former was assessed at 80 per cent, and the latter at 100 per cent. The evidence tends to show that most of the land in this vicinity is underlaid with a loose, sandy subsoil, and at flood times, the water is held back, and rises near the surface of land not overflowed, causing the same to become wet and more or less unsuited for cultivation. The new channel crosses the river at many places, but extends in a direct course, has a good fall, and the flood waters will be carried away much more rapidly than formerly. While the relative elevation of the bed of the old and the new channel is not shown, it appears to be conceded that the latter is considerably lower, and will afford much better facilities for subdrainage than the former. The land lying south of Section 16 is low, and much of it completely overflows. There is some conflict in the evidence as to the extent to which the Myerly land is affected by the larger floods; but it is practically conceded that no substantial part of it is covered at times of ordinary overflow of other lands in the vicinity. It is also conceded that tile drainage for this land will have to be into the ditch in District No. 21. The new channel is brought much nearer the Myerly tract, and we have no doubt will also greatly facilitate the subdrainage of this land, which yields good crops of hay, and should, as the result of the two improvements, become valuable for the production of corn and other crops. We are of the opinion that it should not have been classified at 100 per cent. The evidence seems to take it out of that class. On the other hand, the Boyd land, but for the dike, would have been properly classified at 100 per cent.

The law applicable to the facts presented by the record has been frequently discussed, and is too well settled to require further discussion at this time. Giving full force to the presumption arising from the finding and decree of the

district court affirming the assessment recommended by the classification committee and approved by the board of supervisors, we are, nevertheless, persuaded that there should be a reduction in the assessment of all of the Boyd land and the south half of the southeast quarter and the northwest quarter of the southeast quarter of Section 16.

The evidence shows that the Boyd land is largely protected from overflow from the river by the dike, and that, since the construction thereof, it has yielded good crops of corn and other grain. The record does not afford a very satisfactory basis for comparing the Myerly land with other tracts similarly situated, but it is tacitly conceded by the witnesses for appellee that it overflows much less than the land adjoining it on the south and west. The record is silent as to the land in Section 15, and we can make no comparison therewith. It will serve no useful purpose to discuss the facts involved upon this appeal at length. Each case must necessarily be determined upon the facts peculiar thereto. We reach the conclusion, however, that a larger reduction in the assessment laid upon the Boyd land should have been made, on account of the dike, and that the 120-acre tract of the Myerly land above described is assessed too high. The assessment upon the Boyd land should be reduced to 60 per cent, and that upon the south half of the southeast quarter and the northwest quarter of the southeast quarter of Section 16 to 80 per cent; otherwise, the assessments should be sustained.

It is, therefore, ordered that the decree of the court below be modified to the extent indicated, and the cause is remanded for decree in harmony herewith.—*Modified and affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.