G. W. MARTIN et ux., appellees and cross-appellants, v. BOARD OF SUPERVISORS OF POLK COUNTY et al., appellants.

CAPITOL DRIVE-IN THEATRE, INC., et al., appellees and cross-appellants, v. BOARD OF SUPERVISORS OF POLK COUNTY et al., appellants.

No. 49868.

(Reported in 100 N.W.2d 652)

January 12, 1960.

Opinion Modified and Rehearing Denied

March 11, 1960.

Ray Hanrahan, County Attorney for Polk County, and A. R. Shepherd, both of Des Moines, for appellants.

Hansen, Wheatcraft & Galvin and Gibson, Stewart & Garrett, all of Des Moines, for appellees and cross-appellants.

PETERSON, J.—In October 1954 ninety-five owners of property in northeast Des Moines filed with the County Auditor of Polk County a petition for establishment of a drainage district in said area in accordance with the provisions of chapter 455 of the 1950 Code of Iowa. The petition was approved by the Board of Supervisors and the district was established as Drainage District No. 51. It involved 1600 acres and 800 residents or owners of property. What was known as the main ditch ran east and west through the area. To carry out the purposes of the drainage project it became necessary to establish three branch ditches or drainage-pipe extensions. This case does not involve Branch No. I. It does pertain to the main ditch and to Branches No. II and No. III. In connection with the branch extensions, subdistricts were established involving the acreage served by each branch.

There is no question in this case concerning the legality of the establishment of the district, nor the regularity of the proceedings. The only question is that one owner of property, G. W. Martin, and one lessee, Capitol Drive-In Theatre, Inc., who was responsible for special assessments, filed objections to the report of the commissioners.

The report was approved by the Board of Supervisors and appeal was taken to the District Court. Mr. Martin's assessment was $8693.51. The District Court reduced it to $5863.15. The Theatre, Inc., assessment was $10,238.17. The District Court reduced it to $8700.68.

The Board of Supervisors appealed as to the reductions. Both plaintiffs filed cross-appeals, alleging the reductions made by the trial court were not equitable nor sufficient.

I. The question involved in this case is primarily factual. A question was originally raised as to statutory compliance of the commissioners in filing their report. We approve the finding of the trial court concerning this question:

"In several other respects the commissioners * * * failed to strictly and literally comply with statutory direction in connection with the written report made by them to the county auditor. I must conclude that the hereinabove referred to discrepancies in the commissioners' report were irregularities only, not jurisdictional, and that such irregularities did not invalidate the assessments in and of themselves."

The question was not raised, urged nor argued on appeal.

The factual question is: were the assessments against plaintiffs' properties for the main ditch, and the two branches running through their properties, fair, just and equitable, in comparison with assessments against other properties in that area in the district, or in the two subdistricts?

Before analyzing the facts we will consider the statutory background and a few well-established, judicial principles as to drainage districts.

The statutory basis appears in section 455.1, 1958 Code of Iowa. As pertaining to this case it provides: "The board of supervisors of any county shall have jurisdiction, power, and authority at any regular, special, or adjourned session, to establish a drainage district or districts * * * and cause to be constructed as hereinafter provided any levee, ditch, drain, or watercourse * * * whenever the same will be of public utility or conducive to the public health, convenience, or welfare."

Section 455.7 provides: "Two or more owners of lands named in the petition described in section 455.9 may file in the office of the county auditor a petition for the establishment of a * * * drainage district."

As to the levy made to pay the costs section 455.45 provides for the appointment of three commissioners by the board of supervisors to assess benefits and classify the lands affected by such improvements.

Section 455.46 then provides: "* * * said commissioners * * * shall begin to inspect and classify all the lands within said district * * * in tracts of forty acres or less according to the legal or recognized subdivisions, in a graduated scale of benefits to be numbered according to the benefit to be received by each of such tracts * * * and, when completed, shall make a full, accurate, and detailed report thereof and file the same

with the auditor. The lands receiving the greatest benefit shall be marked on a scale of one hundred, and those benefited in a less degree with such percentage of one hundred as the benefits received bear in proportion thereto."

Section 455.102 provides: "On the trial of an appeal from the action of the board in fixing and assessing the amount of benefits to any land within the district as established, it shall not be competent to show that any lands assessed for benefits within said district as established are not benefited in some degree by the construction of the said improvement."

■■ A strong presumption is entertained in favor of the action of the commissioners, the board and the trial court. Objectors have the burden of proof to overcome this presumption. Hall v. Polk, 181 Iowa 828, 165 N.W. 119; Chicago & Northwestern Ry. Co. v. Dreessen, 243 Iowa 397, 402, 52 N.W.2d 34; Collins v. Board of Supervisors, 158 Iowa 322, 138 N.W. 1095. In the Northwestern case above-cited the court said: "A drainage assessment is generally presumed to be correct and equitable and the burden is on the party appealing therefrom to show it is incorrect or inequitable."

The presumption is so strong that it can be overcome only by a showing of fraud, prejudice, gross error or evident mistake. Rogers v. Board of Supervisors, 195 Iowa 1, 189 N.W. 950; Cordes v. Board of Supervisors, 197 Iowa 136, 196 N.W. 997; Fulton v. Sherman, 212 Iowa 1218, 238 N.W. 88. In the case at bar there was no fraud nor prejudice. The three commissioners were sincere and honorable men. However, they made mistakes as to the assessments against plaintiffs.

■ The presence of a previous drain or a dike which controls a portion of the water should be taken into consideration by the commissioners in their appraisal of specific properties in the district. For many years, prior to the establishment of this district, there had been a tile drain under the property of both plaintiffs. Boyd v. Board of Supervisors, 187 Iowa 1234, 175 N.W. 319; Fulton v. Sherman, supra; Brandt v. Board of Supervisors, 197 Iowa 495, 197 N.W. 462; Petersen v. Board of Supervisors, 208 Iowa 748, 751, 226 N.W. 1, 3. In the last cited case we said: "We are persuaded, however, from an examination of the record, that the commissioners did not give the

appellant sufficient credit for the condition of appellant's land because of the existing improvement." Before the establishment of the drainage district, the appellant had constructed a private tile-drainage system under his land.

■ In assessing the properties in the district the commissioners are authorized to take into consideration potential future use. Chicago, R. I. & P. Ry. Co. v. Wright County Drainage District No. 43, 175 Iowa 417, 154 N.W. 888; Cordes v. Board of Supervisors, 197 Iowa 136, 140, 196 N.W. 997, 998; Fulton v. Sherman, supra; Chicago & N. W. Ry. Co. v. Board of Supervisors of Hamilton County, 182 Iowa 60, 79, 162 N.W. 868, 874, 165 N.W. 390. In last cited case this court said: "Benefits, as we have before had occasion to say, include more than immediate enhancement of market value."

II. Because of the difference in number of properties involved in each area it is necessary that we consider the assessments against plaintiffs' properties as to the main ditch, Branch II and Branch III separately.

G. W. Martin was the owner of one tract of 23.97 acres located from Broadway south to Hoffman Road, and immediately west of Northeast Fourteenth Street in Des Moines. This tract had been agricultural property for many years. At the time of assessment he used it as a pony farm. He also owned 17.1 acres immediately north of Broadway and west of East Fourteenth Street, which was rented to plaintiff Capitol Drive-In Theatre, Inc., at $1700 per year. He owned in the two tracts 2.56% of the 1600 acres in the drainage district. Under its lease the obligation against the 17.1 acres was that of the plaintiff Theatre, Inc. The commissioners levied against plaintiff Martin's two tracts of 23.97 acres and 17.1 acres a total sum of $18,931.68. This is 26.2% of the total cost of $71,740.22 for the main ditch and Branches II and III.

The percentage variance in the number of acres in the two Martin properties and the total amount assessed against the properties is not controlling, because of the various types of property in the district, but is worthy of note in viewing the complete picture.

1. Immediately to the east and southeast of the Martin and Theatre properties is an extensive industrial area which

has been developed during the past ten years. This area was in the drainage district and received substantial benefit from the main ditch and from Branch II.

 We approve and affirm the finding of fact of the trial court with reference to the main ditch assessments, when the court stated: ·"From the entire record, it appears that the plaintiffs receive no more benefit from the main ditch than other properties in the area, and the assessment for this item should be adjusted accordingly."

The commissioners properly divided the 800 tracts of property in the drainage district on a percentage basis. The properties receiving the greatest benefit were placed on a 100% schedule. From that it was scaled down to as low as 2½%.

Mr. Martin's assessment on his 23.97 acres was assessed on a 100% basis as to the main ditch, or a total of $3817.53. His property rented to Theatre, Inc., of 17.1 acres, was assessed on a basis of 100% or $2723.39.

In compliance with the finding of fact of the trial court, as above-quoted, the court reduced the assessment of Mr. Martin as to the main ditch to $2863.15. The Theatre, Inc., assessment was reduced to $1969.52. We hold that partly because the property had a private tile-drainage system, but more important because of the inequality of assessment as between this property and the extensive industrial property immediately to the east and southeast, the assessment against Mr. Martin as to his farm should be reduced to the 50% bracket, or to $1908.77. For the same reasons the assessment with reference to his property leased to plaintiff Theatre, Inc., is placed in the 50% bracket, and reduced to $1361.69.

In placing plaintiff Martin's assessment in the 50% bracket we are taking into consideration the potential value of the Martin farm as a location for further extension of the industrial development in the area. This is not a certainty because Mr. Martin only has 163 feet frontage on East Fourteenth Street. He does have complete frontage on Hoffman Road, on which there has been some industrial development to the east. He is confronted, however, with the expense of approximately a three-foot fill on his property to make it usable for industrial purposes. There was testimony, which was not refuted by defendants, that

such a development would cost him over sixty thousand dollars. Other property for industrial purposes in the area had recently been sold at $3800 per acre. On this basis there would still be a potential substantial valuation in his property for such purpose. This potential is not sufficiently certain or definite, however, to justify placing his property in the 100% bracket.

2. Drainage Branch No. II, which was in the nature of a 24-inch tile, runs southeasterly from the main ditch through the Wartburg property, then through the rear of the Theatre property, and through Mr. Martin's farm, with the inlet at the southeast intersection of Fourteenth Street and Hoffman Road. It provided drainage for the Wartburg property, the Theatre property, roads, railroad, highway 69 and a large number of industrial and other properties to the east and southeast of the Martin property.

With reference to the Martin farm of 23.97 acres the drainage pipe is of no value at the present time. Mr. Neil Carpenter, the engineer in charge of the district, testified: "Actually at the present time Branch II provides little if any drainage for the Martin property."

For some reason, in the development of this branch, the engineer and contractors placed two thirds of the 24-inch drainage pipe on top of the ground across the Martin farm. The balance was partly over and partly under the ground. The part above the ground was covered with dirt, creating a mole-like elevation. The commissioners placed 17.9 acres in the 75% bracket; 1.3 acres in the 25% bracket and 4.3 acres in the 5% bracket. (This pertained to higher ground.) The total assessment was $4875.98.

With reference to Branch II we approve and affirm the finding of fact of the trial court as follows:

"The commissioners have consistently assessed the plaintiffs here at a higher percentage for Branch II than they have assessed other owners whose properties are similar to and lie adjacent to those of the plaintiffs, and adjustment of plaintiffs' assessments for Branch II must likewise be adjusted."

The trial court adjusted this assessment to $3000. We hold 19.67 acres of the Martin pony farm should be placed in the 25% bracket. The only reason we are leaving some assessment

against this tract as to Branch II is because of the potential for industrial development. If it were not for such fact, we would place the assessment on only a nominal basis. The district having been established, it is incompetent to show no benefit. Section 455.102. If there is industrial development the branch will become of value. The commissioners fixed 4.3 acres at 5% and we will leave that as they fixed it. The amount of assessment against plaintiff Martin's property, therefore, as to Branch II shall be $2266.90.

The commissioners placed the west 7.1 acres of the Theatre, Inc., property in the 100% bracket with a total assessment of $3135.83. Partly because of the presence of a private tile which would, as to normal rains, take care of this property without the ditch, but largely because of the inequality between this assessment and the assessment against the industrial property to the east, we hold the 7.1 acres in the Branch II district should be placed in the 50% bracket, or with an assessment of $1567.92.

We are placing this property in a higher bracket than the Martin farm because there was more benefit to the Theatre property from Branch II.

3. The Branch III drainage improvement did not involve the Martin farm. It did involve the Theatre property. It ran from the main ditch in a southeasterly direction to an inlet across northeast Fourteenth Street immediately east of the Theatre. Four other properties east of Fourteenth Street and one property north of the Theatre received benefits from the ditch. The commissioners placed the east ten acres of the tract on which the Theatre was located in this subdistrict area. This was proper because the ditch ran across the front of the Theatre property near Fourteenth Street. Branch III cost $7974.66. The Theatre property was placed in the 100% bracket, and the assessment was $4379.28. This left only $3795.38 against the other five properties in the subdistrict. The Theatre property is entitled to a substantial assessment. However, we hold it is not entitled to be in the 100% bracket, leaving considerable less than half of the assessment to the other five properties. We, therefore, reduce the Theatre assessment as to Branch III from the 100% bracket to the 75% bracket, or to the amount of

$3284.46. This is the only place at which we reverse the findings of fact and decree of the trial court. The court did not change this assessment.

III. As to the supplemental assessments to be made for the main ditch, created by our readjustment of the original assessments against plaintiffs' property, the Board of Supervisors shall proceed as provided in chapter 455, and particularly as in section 455.109, 1958 Iowa Code. The properties to be reassessed as to Branches II and III shall be the properties contained in the respective branch subdistricts, established as provided in section 455.48.

1. Plaintiffs' original assessments against the 40.1 acres as to the main ditch amounted to $6540.92. We have reduced the assessments herein to $3270.46. This creates the necessity of a reassessment, to levy the difference of $3270.46.

2. The cost of Branch II was $21,227.03. Twenty-six point seven (26.7) acres of the two plaintiffs was in the district, and originally assessed at $8011.81. We have reduced the assessment to $3834.82, leaving $4176.99 to be spread over the remainder of the Branch II subdistrict in an equitable and just manner. Outside of plaintiffs' properties there were 24 property tracts in the subdistrict, mostly in the industrial area, totaling 114.85 acres, with a present assessment of $12,224.72.

3. The cost of Branch III was $7974.66. Plaintiff Theatre, Inc., was assessed $4379.28, or 55% of the cost. We have reduced this to $3284.46, leaving $1094.82 to be spread over the remaining properties in the Branch III subdistrict in an equitable and just manner. Plaintiff Theatre, Inc., has ten acres in the district. The remainder of the district has five property owners, owning 67.7 acres, with an original assessment of $3381.42.

4. It is illuminating to compare the assessment per acre as fixed herein as to plaintiffs' properties, and the properties in the respective areas, after adding the new assessments. On a broad basis it shows the equality which is produced by our decision in the instant case.

It must be strictly understood that the average assessment per acre, as to all properties outside of plaintiffs', is no criterion for reassessment of the property by the commissioners

and Board of Supervisors. The properties must be carefully, and with equality, reassessed on the basis of benefits as to each property.

a. Main ditch: the properties of the two plaintiffs of 40.1 acres, $81.55 per acre. The other 35 properties in the reassessment area of 228.88 acres, $57.81 per acre.

b. Branch II: plaintiffs' 26.7 acres in the subdistrict, $143.62 per acre. The other 24 properties in the subdistrict of 114.85 acres, $143.27 per acre.

c. Branch III: plaintiff Theatre, Inc.'s, ten acres in the subdistrict, $328.45 per acre. The other five properties in the subdistrict of 67.7 acres, $66.12 per acre. Conservatively, plaintiffs' benefit was five times more than that of the other properties in this subdistrict.

The decree of the trial court with reference to assessments against plaintiffs as to the main ditch and Branch II is modified and affirmed. The decree with reference to the assessment against plaintiff Theatre, Inc., as to Branch III is reversed.— Modified and affirmed in part; reversed in part.

All JUSTICES concur.