759 N.W.2d 82 (2009)
276 Neb. 983
OMAHA POLICE UNION LOCAL 101, IUPA, AFL-CIO, Appellee,
v.
CITY OF OMAHA, a municipal corporation, and the chief of police, Thomas Warren, Appellants.
No. S-07-1245.
Supreme Court of Nebraska.
January 2, 2009.
*83 Paul D. Kratz, Omaha City Attorney, and Bernard J. in den Bosch for appellants.
Thomas F. Dowd, of Dowd, Howard & Corrigan, L.L.C., Omaha, for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*84 WRIGHT, J.

NATURE OF CASE
This matter arose from the filing of a petition with the Commission of Industrial Relations (CIR) by the Omaha Police Union Local 101, IUPA, AFL-CIO (Union), against the City of Omaha and its chief of police, Thomas Warren (collectively the City). The CIR issued an order granting partial relief as requested by the Union, and the City appealed. This court found that the CIR erred in applying the "deliberate and reckless untruth" standard, which applies to private sector labor relations cases, and that the "flagrant misconduct" standard applies to protected speech issues in public sector employment cases. See Omaha Police Union Local 101 v. City of Omaha, 274 Neb. 70, 736 N.W.2d 375 (2007). We affirmed in part, and in part reversed the judgment and remanded the cause with directions for the CIR to apply the flagrant misconduct standard. Id.
Applying the flagrant misconduct standard, the CIR determined that remarks made by an Omaha police officer in a Union newspaper were protected speech. The CIR again ordered the City to place a statement in the Union newsletter indicating that it will recognize the Union members' rights to protected speech and other activity. The City has appealed.

SCOPE OF REVIEW
Any order or decision of the CIR may be modified, reversed, or set aside by the appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. Id.

FACTS
During a meeting of the Union on December 14, 2004, the president of the Union, Omaha Police Department (OPD) Sgt. Timothy Andersen, was asked about the method OPD used to calculate its response times for 911 emergency dispatch calls. Andersen gave his opinion that the method used by OPD to calculate response times was misleading. Reports of Andersen's statements were relayed to Warren several days after the meeting. Warren initiated an Internal Affairs (IA) investigation to determine whether Andersen had advised officers to disregard departmental standard operating procedures. IA found that Andersen had neither violated departmental procedures nor acted unprofessionally. Warren adopted those findings and took no disciplinary action against Andersen.
In response to the events involving Andersen, OPD Sgt. Kevin Housh wrote an article in the February 2005 issue of the Union newspaper, "The Shield," which was distributed to members of the Union as well as to members of the community. Housh's article was generally critical of OPD procedures for two-officer 911 calls and the manner in which the City of Omaha and OPD calculated response time. Housh characterized city officials as "[a] bunch of grown men and women, supposedly leaders, acting like petty criminals trying to conceal some kind of crime."
Based on the article, Warren initiated an IA investigation of Housh. Warren alleged that Housh's conduct constituted gross disrespect and insubordination and was unbecoming an officer, in violation of OPD rules of conduct. Warren adopted IA's finding that the unprofessional conduct allegation against Housh should be *85 sustained and terminated Housh's employment.
After the Union appealed Housh's termination to the City of Omaha Personnel Board, the City of Omaha and the Union reached an agreement and Housh was reinstated to OPD but was required to serve a 20-day suspension without pay and to discontinue working on the emergency response unit.
The Union filed a petition with the CIR, claiming that the City had engaged in prohibited labor practices under the Industrial Relations Act, Neb.Rev.Stat. §§ 48-801 to 48-838 (Reissue 2004)(Act). It alleged that the City's investigations of Andersen and Housh and the termination of Housh's employment had "`chilled'" other Union members' expression of opinions at Union meetings and in the Union publication. It claimed that the City had engaged in prohibited labor practices under § 48-824(2)(a) by interfering with, restraining, and coercing Union members in their exercise of rights granted under § 48-837. It asked that the City be restrained from interfering with Union members' rights to express their opinions at Union meetings or in Union publications relating to terms and conditions of their employment, the City of Omaha's administration, and OPD's management.
The CIR found that Housh's article was a protected Union activity if it was "concerted activity" falling under the protection of § 48-824(2)(a). It relied on federal labor cases to find that employee speech is a protected concerted activity if it is related to working conditions. It determined that Housh's article pertained to officer safety, which was a working condition and a mandatory subject of bargaining, and that an employee loses protection for speech only if the speech is deliberately or recklessly untrue.
The CIR concluded that "Housh's statements, while certainly constituting intemperate, abusive and insulting rhetorical hyperbole, fall short of deliberate or reckless untruth. The comments were made in a union publication in the context of a management/union disagreement, and they were therefore protected from interference, restraint or coercion by management."
The City was ordered "to not interfere in any way" with statements made by employees in the Union publication which did not violate the standard of deliberate or reckless untruth. The City was required to place a statement in the Union newsletter indicating that it would recognize the Union members' rights to protected activity.
On appeal to this court, we determined that the "deliberate and reckless untruth" standard of the National Labor Relations Act was inappropriate in the context of public sector employment. We concluded that the legal standard of flagrant misconduct should apply to the determination of whether public employees' speech is protected under the Act. "Flagrant misconduct includes, but is not limited to, statements or actions that (1) are of an outrageous and insubordinate nature, (2) compromise the public employer's ability to accomplish its mission, or (3) disrupt discipline." Omaha Police Union Local 101 v. City of Omaha, 274 Neb. 70, 86, 736 N.W.2d 375, 387-88 (2007).
We affirmed in part, and in part reversed the judgment and remanded the cause to the CIR so that it could apply the flagrant misconduct standard we prescribed for determining when Union speech is protected under the Act. On remand, the CIR again determined that Housh's conduct was protected, and it ordered the City not to interfere in any statements made in the Union publication *86 which do not violate such standard. The City was again ordered to place a statement in the Union newspaper indicating that it recognizes the rights of the Union members to protected activity.

ASSIGNMENT OF ERROR
The City assigns as error that the CIR erred in its evaluation of whether the speech of an employee of a law enforcement agency in a Union newspaper was flagrant misconduct and, thus, exceeded the protections of § 48-824(2)(a).

ANALYSIS
In its order following remand, the CIR noted that the newsletter in which Housh's article was published was primarily a Union newsletter, although it is not distributed exclusively to Union members. Housh's article was "designed, rather than impulsive," and the CIR could not say it was provoked by the employer's words or actions. Housh's conduct was, as previously determined, "intemperate, abusive and insulting." However, the CIR found that the remarks did not reach the level of flagrant misconduct. "They were in fact rhetorical hyperbole, which would not be reasonably believed by any reader as accusing of any crime or wrongdoing. They were intemperate, immature hyperbole, but they were nonetheless protected union speech in the context of the newsletter." The CIR found no evidence of any loss of discipline, respect, or ability to accomplish the police department's mission that could be attributed to the publication of the article, and the CIR doubted that the remarks would reflect poorly on anyone other than Housh and the newsletter's editor. The CIR concluded that Housh's remarks were protected speech.
The issue is whether the CIR properly applied the standard of "flagrant misconduct." Public employees who belong to a labor organization have the protected right to engage in conduct and publish statements concerning terms and conditions of employment, but not if the speech or conduct constitutes flagrant misconduct. See Omaha Police Union Local 101 v. City of Omaha, 274 Neb. 70, 736 N.W.2d 375 (2007).
In our review of an order of the CIR, the decision may be modified, reversed, or set aside on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. See id.
Had this court conducted its own review of Housh's conduct, the result might have been different. Housh's article appeared in a newsletter circulated outside the Union. Housh stated that city officials were "acting like petty criminals trying to conceal some kind of crime."
We have defined flagrant misconduct as "statements or actions that (1) are of an outrageous and insubordinate nature, (2) compromise the public employer's ability to accomplish its mission, or (3) disrupt discipline." Omaha Police Union Local 101, 274 Neb. at 86, 736 N.W.2d at 388. Although reasonable minds could differ as to whether Housh's statements were outrageous and insubordinate, given our standard of review, we conclude that the CIR's order is supported by the facts, and it is affirmed.

CONCLUSION
The decision of the CIR is affirmed.
AFFIRMED.
HEAVICAN, C.J., not participating.