# IN THE COURT OF APPEALS OF IOWA

No. 13-0929
Filed August 13, 2014

PHILIP NAEVE, MARILYNNE J. NAEVE,
KYNDRA NAEVE WALTON, CAMILLE
NAEVE URBAN, NAEVE FARM, INC.,
and THE PHILIP & MARILYNNE
NAEVE TRUST,
    Plaintiffs-Appellants,

vs.

HUMBOLDT COUNTY DRAINAGE
DISTRICT #126, HUMBOLDT COUNTY
BOARD OF SUPERVISORS and ITS
MEMBERS, HARLEY HETT, JERRY
HAVERLY, HARLAN HANSEN, JOHN
M. CHRISTIANSON and CARL MATTES,
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Humboldt County, Joel E. Swanson, Judge.

Landowners appeal from the district court's order upholding the establishment of a drainage district and assessments against the landowner. **AFFIRMED.**

Camille Urban and Jonathan M. Gallagher of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellants.

David R. Johnson of Brinton, Bordwell & Johnson, Clarion, for appellees.

Heard by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

Landowners appeal from a district court decision denying their petition to set aside the establishment of a drainage district and to reclassify lands to reduce their assessment of costs. The county board of supervisors contends the landowners waived their arguments against the drainage district by failing to raise them before the board. The board also contends the classification and assessment are valid and should be affirmed. We affirm.

I. **BACKGROUND FACTS AND PROCEEDINGS.**

A. **Establishment of Drainage Districts.**

"The purpose of drainage districts is to build and maintain drainage improvements that provide for the drainage and improvement of agricultural and other lands, thereby making them tillable or suitable for profitable use." *Hardin Co. Drainage Dist. 55, Lateral 10 v. Union Pac. R. Co.*, 826 N.W.2d 507, 510 (Iowa 2013) (internal quotation and citation omitted). "To achieve this goal, counties may establish a drainage district and construct whatever drainage improvement is necessary for the public health, convenience, or welfare." *Id.*

County boards of supervisors have authority to establish and maintain drainage districts through the procedure set out in Iowa Code chapter 468. Two or more owners of the land in question must file a petition with the county auditor setting forth the details of the proposed drainage district, including the lands to be enclosed in the district. *See* Iowa Code §§ 468.6 and .8. The county board of supervisors then must, at its next session, examine and find the filed petition "sufficient in form and substance." *See* Iowa Code § 468.10.

If the board does so, it must appoint a "disinterested and competent" civil engineer. *Id.* The engineer must survey the lands described in the petition and file a report to the board setting forth the specific details of the proposed district, including its exact location, plans for its construction, and the probable costs. *See* Iowa Code § 468.12. Upon filing of the engineer's report recommending the drainage district, the board must examine and consider the report before formally adopting or approving it. *See* Iowa Code § 468.13. Approval of the report constitutes a "tentative plan only" for the establishment of the drainage district. *See* Iowa Code § 468.14.

The board then must set a date for a public hearing on the petition to establish the district not less than forty days from the date of their approval of the engineer's report. *Id.* The board must instruct the county auditor to provide notice to the owners whose land is implicated in the petition, as well as all other persons whom the petition may concern. *Id.* Notice must be of the pendency of the petition, the favorable engineer's report, and the day and hour of the hearing and must inform parties that all claims and objections must be "made in writing and filed in the office of the auditor at or before the time set" for the hearing. *Id.* Notice must be given not less than twenty days prior to the date set for the hearing. *See* Iowa Code §§ 468.15-.16. Parties may waive notice by filing a statement to that effect with the auditor. *See* Iowa Code § 468.18.

At the date and time set for hearing, the board will hear the petition and determine its sufficiency as to form and substance, and all objections filed against the establishment of the district. *See* Iowa Code § 468.21. If the board

determines the district is not in the public interest, it shall dismiss the petition. *Id.* If the board finds the petition "complies with the requirements of law in form and substance," that the district would be "conducive to the public health, convenience, welfare, benefit, or utility," that the cost is not excessive, and no claims have been filed for damages, it may establish the district consistent with the engineer's report. *See* Iowa Code § 468.22.

Interested landowners may file objections or remonstrances[1] to the establishment of the drainage district. *See* Iowa Code §§ 468.19, .21, and .28. If a majority of the interested landowners, owning in aggregate seventy-percent or more of the lands in question, file with the county auditor a signed remonstrance against the establishment of the district, the board shall dismiss the proceedings. *See* Iowa Code § 468.28. Any party failing to file a claim or objections to the establishment of the district "at or before the time fixed for said hearing . . . shall be held to have waived all objections and claims[.]" *See* Iowa Code § 468.19.

Once the district has been established, the board must appoint three classification commissioners to determine the benefits, classify the lands, and apportion and assess the costs associated with the district among the various parties. *See* Iowa Code § 468.38. The commissioners must include one competent civil engineer and two landowners in the county who do not have an interest in any of the included lands. *Id.* These commissioners must prepare their conclusions in a detailed report filed with the county auditor. *See* Iowa

---

[1] A "remonstrance" is: "1. A presentation of reasons for opposition or grievance. 2. A formal document stating reasons for opposition or grievance. 3. A formal protest against governmental policy, actions, or officials." *Black's Law Dictionary* 1409 (9th ed. 2009.)

Code § 468.44. The board then must provide for notice of a public hearing to be served upon the interested parties in the same manner as provided for the establishment of the district. *See* Iowa Code § 468.45. At the hearing, the board must hear and determine all objections properly filed and may make such adjustments to the benefits and apportionments of cost as appear to the board to be just and equitable. *See* Iowa Code § 468.46.

Landowners may take an appeal from the establishment of the district itself or the classification and assessment. *See* Iowa Code § 468.83. These appeals are effected by petition to the district court of the county wherein the proceeding was held. *Id.*

### B. Drainage District Number 126.

This case arises from the 2010 establishment of Drainage District Number 126 in Humboldt County. Thirty years prior to the events described here, Philip Naeve installed drainage tile to serve his farmland in sections eleven and fourteen of Corinth Township in Humboldt County. In 2010, Humboldt Community School District constructed a new school in section eleven. With the increased paved area, the county determined it needed to provide for the additional water run-off and sought to establish a drainage district. On July 6, 2010, a Humboldt Community School District employee and an adjacent landowner filed petitions with the county auditor to establish the drainage district. On July 12, 2010, the Board of Supervisors found the petitions to be sufficient and appointed an engineer to prepare a report. The subsequent events are in dispute. The defendants in these actions, collectively the "Board," assert the

Board at its September 20, 2010 meeting approved the engineer's report, set a public hearing date, and directed the county auditor to serve the necessary notices. The Board set the hearing date for November 8th at 9:00 a.m., more than forty days from their approval of the engineer's report. The plaintiffs in these actions, collectively the Naeves, assert the Board only accepted the engineer's report at the November 8th meeting, thus violating the chapter 468 notice requirements. The Board published notice of the public hearing in the local newspaper on October 21, concededly only nineteen days before the hearing. It also mailed notices to the affected landowners,[2] and Philip Naeve acknowledged in testimony that he received the notice by mail. The notice stated in relevant part: "[A]ll objections to the establishment of said drainage district for any reason, must be made in writing and filed in the office of the Humboldt County Auditor at, or before, the time set for such hearing, November 8, 2010, at 9:00 o'clock a.m. in central standard time."

At 9:00 a.m. on November 8, at the start of the public hearing, there were no written objections or remonstrances on file with the county auditor. The engineer explained the proposed plan. Members of the public and interested landowners who were present, including the Naeves, were permitted to make statements to the Board. About one hour into the Board meeting, a Board member asked when was the time for remonstrance. The county's drainage attorney advised the Board the deadline for filing a remonstrance was the start of the hearing and thus had passed. The Board then voted to approve the

---

[2] The record does not reflect when precisely the auditor mailed the notices.

engineer's report for the second time. Then, Philip Naeve asked when he would be able to appeal the Board's decision, to which a Board member replied, "You can definitely appeal it, yes." The Board's counsel then clarified the Naeves could appeal from the establishment of the district, not from the Board's approval of the report. He also clarified the Naeves could appeal from the classifications and assessments, once the Board approved them.

The Board recessed until 10:30 a.m. and at that time sought a final vote on the establishment of the drainage district. The Board took comments from the public in attendance. The Board then voted in favor of the establishment of the district. On November 23, the Naeves filed a petition requesting the district court set aside the Board action and declare the drainage district void.

Pursuant to chapter 468, the Board appointed commissioners to classify the lands and apportion costs. The commissioners surveyed the land and submitted their report. On June 6, 2011, the Board held a public hearing to examine and adopt the report and hear objections. The Naeves and several other landowners filed timely objections and appeared for the hearing. Following the hearing, the Board requested the commissioners reexamine the classifications and the public objections. The commissioners did so and returned to the Board concluding their original assessments were accurate.[3] The Board thus made no alterations and adopted the commissioners' assessments. The result of the assessments was that the Naeves were required to pay around $57,000 in costs for the establishment of the drainage district. The Naeves filed

---

[3] Altogether, the Board met with the engineer and commissioners three times before approving the assessments.

another petition, seeking a reassessment and a reduction in their apportionment of costs.

The district court consolidated the two actions (first, the petition to declare the drainage district void and second, the petition for reassessment) for trial. The Naeves raised several issues: deficiencies in the petitions to establish the district; deficiencies in the notice; the Board's failure to allow a remonstrance; and the classification and apportionment of costs to the Naeves. The district court denied the petitions finding the Board substantially complied with the requirements of chapter 468 and correctly adopted the assessments. The court also found the Naeves failed to file a timely remonstrance as required under the chapter. The Naeves appeal from these decisions.

## II. STANDARD OF REVIEW.

Where a landowner affected by the establishment of a drainage district appeals from a board of supervisor's decision, the action is in equity. *Hicks v. Franklin Cnty. Auditor*, 514 N.W.2d 431, 435 (Iowa 1994). Thus, our review is de novo. Iowa R. App. P. 6.907. Drainage statutes should be liberally construed for the public benefit. *Hicks*, 514 N.W.2d at 435.

## III. ANALYSIS.

The Naeves make three arguments on appeal. First, the district court erred in upholding the drainage district by finding the Board substantially complied with the statutory requirements as to the petition, the engineer's report, and notice. In particular, the Naeves argue failure to adhere strictly to the statutory requirements of the notice and the engineer's report rendered the board

without jurisdiction to establish the drainage district. Second, the district court erred in finding the Naeves' remonstrance untimely. Third, the district court erred in finding the commissioners were appointed appropriately and that the commissioners used the appropriate mechanisms for the classifications and assessments. The Board contends the Naeves waived their arguments on compliance with the statutory requirements, thus, we address the jurisdiction and waiver issues first. We then address the remaining arguments.

### A. Jurisdiction and Waiver.

The Naeves contend the alleged failure to comply with the statutory requirements deprived the Board of jurisdiction to establish the district. They allege deficiencies in the Board's compliance with statutory requirements regarding notice and the engineer's report.

The Naeves assert generally, "[S]trict compliance, particularly in the formation of drainage districts, requires full adherence to each statutory requirement."[4] They cite *Simpson v. Board of Supervisors of Kossuth County*, 162 N.W. 824 (Iowa 1917), for the proposition that the board lacked jurisdiction based on the engineer's report. In *Simpson*, an engineer's report failed to

---

[4] The Naeves assert strict compliance with the statutory requirements is required. The supreme court most recently addressed the standard of compliance relating to establishing and maintaining drainage districts in *Hicks*, 514 N.W.2d at 435, where it stated:

> When reviewing drainage proceedings of boards of supervisors we have applied three principles: the drainage statutes shall be liberally construed for the public benefit; strict compliance with statutory provisions is required to establish a drainage district, while substantial compliance is sufficient as to repairs or improvements; and the procedural requirements should be too technically construed.

The case before us does not require a discussion or application of any particular standard of compliance and we decline to address it further at this time.

specify the proposed width of a certain right of way. 162 N.W. at 825. Appraisers for the district estimated the width would be eighty-five feet and assessed damages accordingly. *Id.* The board notified interested landowners, approved the report, and established the district. *Id.* Later, during excavations, the engineer determined the right of way would have to be 120 feet wide. *Id.* The board, upon the engineer's recommendation and without informing the property owners, approved a resolution increasing the width. *Id.* at 826. The court stated:

> The engineer appointed for the designated purpose must set forth in his report the exact width, boundaries, and location of the right of way required. . . . The report of an engineer recommending the proposed drainage improvement is jurisdictional, and as to such matters the statute is mandatory and must be strictly followed.

*Id.* at 827. It further determined, "[T]he board [was] limited to the establishment of the improvement as recommended" and was "wholly without authority to appropriate the 35-foot strip in the way attempted." *Id.* at 826. Thus, boards do not have authority to deviate from the engineer's report in establishing a drainage district without first observing the same procedural requirements for establishing or modifying the district. Here, there is no allegation that the board attempted to deviate from the engineer's report as filed. Thus, there is no jurisdictional defect in the board's action stemming from the engineer's report.

The Naeves further contend the Board's failure to strictly conform to the statutory requirements of notice rendered it without jurisdiction to establish the drainage district. Indeed, our supreme court has found that failure to provide notice deprived boards of supervisors of jurisdiction with respect to drainage

districts. *See, e.g.*, *Minneapolis & St. L.R. Co. v. Bd. of Supervisors of Marshall Cnty.*, 201 N.W. 14, 14 (Iowa 1924). In *Minneapolis*, a county failed to provide notice to an interested landowner at the address the landowner had designated for such purposes. *Id.* at 14. The landowner did not appear or take any part in the proceedings until he was notified of the assessments against him for establishment of the district. *Id.* Contrary to the board's arguments, our supreme court held this was not "merely a defective notice," but because the board "entirely neglected" to notify the landowner, it had acquired no jurisdiction over him and the district was void. *Id.* at 15. In *Chicago & N.W. Ry. Co. v. Sedgwick*, 213 N.W. 435, 436 (Iowa 1927), a county board of supervisors failed to provide notice to a railroad's designated agent, who did not participate in the proceedings. The supreme court found the board did not obtain jurisdiction over the railroad. *Id.*

Similarly, in *Ioerger v. Schumacher*, 203 N.W.2d 572, 573 (Iowa 1973), a county board of supervisors gave notice of a proposed drainage district to a tenant on the land, rather than its minor owners and their conservator. *Id.* Our supreme court again found the board lacked jurisdiction as to the minor owners, and the assessment of costs was void.[5] *Id.* at 576. Here, the alleged defects in notice do not rise to the same level. Although the notice was published one day late, the alleged deficiencies did not rise to the level of a total failure or "entire neglect" to notify. The Naeves were notified of the hearing, appeared, and discussed the drainage district with the Board. Their complaint is simply

---

[5] This was true, notwithstanding the tenant on the land was the minors' father. *Ioerger*, 203 N.W.2d at 573.

technical; they do not complain that they were harmed in any way by the one-day delay. *See Hicks,* 514 N.W.2d at 435 (procedural requirements should not be too technically construed). We reject the Naeves' contention that the Board lacked jurisdiction over them based on the alleged notice deficiencies.

The Naeves present a number of procedural and substantive defects arising in the course of establishing the drainage district, including defects in the content of the original petitions, the notice, and the engineer's report. They contend the Board was required to comply strictly with the statutory requirements and, having failed to do so, their decision to establish the drainage district is void. The Board argues the Naeves' objections must be deemed waived pursuant to Iowa Code section 468.19, which states:

> Any person, company, or corporation failing to file any claim for damages or objections to the establishment of the district *at or before the time fixed for said hearing*, except claims for land required for right of way, or for settling basins, shall be held to have waived all objections and claims for damages.

(Emphasis added.) By failing to file any written objections "at or before the time fixed" for the hearing, the Board argues, the Naeves waived any claims as to procedural or substantive deficiencies in the establishment of the district.

The Naeves respond they could not have waived their objections because the Board's notice was deficient in failing to inform them the consequence of failing to objection would be waiver. They cite *Mammel v. M & P Missouri River Levee Dist.*, 326 N.W.2d 299, 302 (Iowa 1982), where our supreme court determined the following elements of notice are essential:

> (1) The notice must inform affected parties of the nature of the project.

(2) It must inform affected parties that their land is involved.

(3) It must inform them of their right to object or file claims for damages and the consequences of their failure to do so.

(4) It must inform them of the time and place of any required public hearing.

(Internal citations omitted.)  The Naeves assert notice was defective in failing to inform the landowners that objections not raised before the Board would be deemed waived.

In *Simpson*, the appealing landowner made a number of objections before the board of supervisors.  162 N.W. at 826.  However, on appeal to the district court, he argued additional complaints about the engineer's report not previously raised.  *Id.*  The supreme court held

> Upon appeal from the order of establishment every objection urged against the proposed scheme of drainage may be reviewed and passed upon by the district court upon the hearing of such appeal, but only such objections as we made before the boards of supervisors, will be considered by the district court.

*Id.* at 827.  The court found, because the landowner failed to object before the board regarding the report, those complaints were waived.  The court further found, had the landowner raised the objections properly, the board could have directed the engineer to amend his report or otherwise remedy the asserted defects.

Failure to object also can result in waiver of errors in notice.  In *Lightner v. Board of Supervisors of Greene County*, 123 N.W. 749, 753 (Iowa 1909), a board of supervisors published notice for one week rather than the required four.  Our supreme court found with respect to an alleged defective notice, "[A]s no such objection was made before the Board it must be considered as waived. . . .

[W]here a notice is given, defects therein must be pointed out in the objections filed with the Board." *Id.* Such arguments "are waived unless they are presented to the proper tribunal and in the manner pointed out by statute." *Id.* Here, the Naeves were notified of the hearing, appeared, were told that time had passed for remonstrance, did not object to being told time had passed, and stated their concerns about the project to the Board. Chapter 468 and applicable case law are clear that failure to file an objection at or before the time fixed for the establishment hearing is a waiver of all objections. *See* Iowa Code § 468.19. It is not unreasonable to charge objecting landowners—who had notice—with knowledge of the statutory procedures. Such a charge is consistent with the purpose of notice, to safeguard a landowner's right to be informed of the hearing and to object. The right to notice does not encompass the right to be informed of *all* one's rights and interests in a matter. At the time of the establishment hearing, there were no written objections on file with the county auditor. If there were any deficiencies in the petitions, engineer's report, or notice, they should have been raised at that time, while the Board was able to remedy deficiencies by amending the petitions, ordering the engineer to amend the report, or continuing the hearing to provide sufficient notice. Because the Naeves did not raise their jurisdictional objections at the designated time, they are waived, and we do not address them.[6] *See Simpson*, 162 N.W. at 827.

---

[6] The Naeves raised one notice issue orally before the Board as well as on appeal. The Naeves contend the auditor should have sent a copy of notice to the City of Humboldt. Iowa code section 468.15 does indicate, "Copy of the notice shall also be sent by ordinary mail . . . to the clerk or recorder of each city named in the notice[.]" The Board

**B.     Remonstrance Argument.**

The Naeves contend the district court erred in finding there was no timely filed remonstrance at the time of the establishment hearing.  The Naeves blame misleading statements of drainage counsel that the time for filing a remonstrance had passed and of a Board member that the Naeves could file an appeal later. The Naeves assert the Board refused to allow them to file a remonstrance, even though they were prepared to do so.  Although the video recording of the public hearing reflects that drainage counsel did state the time for filing a remonstrance—the beginning of the hearing—had passed, nothing in the video shows the Board refusing to accept a prepared written remonstrance.

Iowa Code section 468.28 provides, "If, *at or before the time set for final hearing* as to the establishment of a proposed levee, drainage, or improvement district. . . there shall have been filed with the county auditor. . . a remonstrance signed by a majority of the landowners in the district" who in aggregate own seventy percent or more of the land, the Board must dismiss the petitions to establish.  At the time set for the final hearing, November 8, 2010, at 9:00 a.m., no remonstrance had been filed.  The Naeves did eventually file a remonstrance in April 2012, nearly one and a half years later.

The Naeves further argue that the Board approved the engineer's report only at the November 8 hearing.  They assert this approval should have triggered the forty-day waiting period before they held another hearing to vote on the establishment of the district.  *See* Iowa Code section 468.14.  Thus the Naeves

responds the Naeves do not have standing to assert notice was not served on other parties, and we agree.

argue they had until the time of that hearing to file a remonstrance. At the November 8 hearing, during the 9:00 a.m. session, the Board did vote to approve the engineer's report, however, the Board had already approved the report once before on September 20. This is reflected in the Board's minutes from the September 20 meeting. Further, a Board member testified at trial the Board approved or accepted the engineer's report on that day, scheduled the public hearing on establishment with the forty-day rule in mind, and directed the county auditor to serve notice. The notice sent out to the landowners also stated that the Board "on the 20th day of September, 2010, approved the Engineer report[.]" Thus, the forty-day requirement ran from the September 20 Board meeting and the November 8 9:00 a.m. public hearing on establishment was the deadline for filing a remonstrance. Accordingly, we find the Naeves' arguments fail. They did not file a remonstrance by the required time. The April 2012 remonstrance was untimely by a year and a half.

**C.    Classification and Assessment.**

1.    <u>Classification Commissioner Qualifications.</u>

The Board appointed the same engineer and two non-engineer commissioners to prepare the classifications and assessments. The Naeves contend the non-engineer commissioners were appointed inappropriately. Iowa Code section 468.24 provides once the board votes to establish the district, it

> shall appoint three commissioners to assess benefits and classify the lands affected by the improvement. One of the commissioners shall be a competent civil engineer and two of them shall be resident freeholders of the county in which the district is located, but not living within, nor interested in, any lands included in the

district, nor related to any party whose land is affected by the district.

The Naeves argue the two lay classification commissioners were appointed inappropriately because, as taxpayers living within and financially supporting the school district, they had an interest in project and met the definition of "related to" an affected party, the school district.[7] Eight written objections were timely filed before the hearing on the classification of lands. The Board heard comments from the objectors at the classification hearing and decided to "have the Commissioners take another look at the classifications and resubmit the report after consideration of the objections." Having done so, the Commissioners concluded their original classifications were correct, made no alterations, and resubmitted their report, which the Board approved. The Naeves had not objected to the qualifications of the commissioners. Nor did the Naeves raise the qualifications of the commissioners on their petition to the district court; therefore the district court did not rule on the issue. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Kramer v. Bd. of Adjustment*, 759 N.W.2d 86, 93 (Iowa Ct. App. 2010). Accordingly, we do not address their qualifications argument.

### 2. Mechanisms for Classification.

The Naeves also contend the classification commissioners failed to apply the correct mechanisms for classification and assessment. They assert the

---

[7] *See Bluffs Dev. Co., Inc. v. Bd. of Adjustment of Pottawattamie Cnty.*, 499 N.W.2d 12, 14-18 (Iowa 1993).

commissioners assessed them an excessive portion of the cost. The total cost of the project was around $300,000, of which the Naeves were required to pay around $57,000. The Naeves first argue the district court failed to recognize the taking of their prior improvements and properly compensate them for the taking. However, they failed to raise this issue in their petition before the district court and cannot raise it for the first time upon appeal. *See id.*[8]

The Naeves assert various errors in the commissioners' assessments arguing the commissioners failed to substantially comply with their statutory duties under chapter 468. Chapter 468 provides a conclusive presumption that,

> On the trial of an appeal from the action of the Board in fixing and assessing the amount of benefits to any land within the district as established, it shall not be competent to show that any lands assessed for benefits within said district as established are not benefited in some degree by the construction of the said improvement.

*See* Iowa Code § 468.92. In assessing the proper apportionment of the costs,

> [i]f . . . it were permissible for every individual owner to come into court and show that his particular tract received no benefit from the improvement and be thereby relieved from liability to pay part of the tax, the law would be robbed of all practical effectiveness, and the whole system of drainage as a public enterprise be paralyzed.

*Chicago & N.W. Ry. Co. v. Bd. of Supervisors of Hamilton Cnty.*, 162 N.W. 868, 873 (Iowa 1917). Thus, the Naeves have the burden of proving the assessment was excessive. *See Schwarz Farm Corp. v. Bd of Supervisors of Hamilton Cnty.*,

---

[8] The Naeves assert Philip Naeve tiled his land at expense to himself and as a result the district received benefits for which he was not compensated. A taking occurs where the state "substantially deprives one of the use and enjoyment of his property or a portion thereof." *Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 9 (Iowa 2006). The Naeves incorrectly view the assessments as a taking of their private tile, however, the tile they installed remains in their land and is their private property. Thus, the circumstances here do not constitute an eminent domain taking.

196 N.W.2d 571, 576 (Iowa 1972). "An assessment based on the commissioners' report and confirmed by the district court carries with it a strong presumption of correctness and must stand unless the objecting landowner shows it resulted from fraud, prejudice, gross error, or evident mistake." *Id.*; *Martin v. Bd. of Supervisors of Polk Cnty.*, 100 N.W.2d 652, 655 (Iowa 1960); *Rogers v. Bd. of Supervisors of Cerro Gordo Cnty.*, 189 N.W. 950, 951 (Iowa 1922). Thus, the Naeves must show fraud, prejudice, gross error, or evident mistake, rather than a standard of compliance, to overturn the commissioners' assessment.

Chapter 468 sets out guidance for the classification commissioners' duties. They are required

> to perform the duties of classification of the lands, to fix the percentages of benefits, apportion and assess the costs and expenses of constructing the improvement, divide and rename original improvements, and, if included in the Board's resolution, adopt special common outlet classifications to be maintained independent of the district's regular assessment schedules, according to law and their best judgment, skill, and ability.

Iowa Code § 468.38. The commissioners

> inspect and classify all the lands within said district . . . in tracts of forty acres or less according to the legal or recognized subdivisions, in a graduated scale of benefits to be numbered according to the benefit to be received by each of such tracts from such improvement, and . . . when completed, shall make a full, accurate, and detailed report thereof and file the same with the auditor. The lands receiving the greatest benefit shall be marked on a scale of one hundred and those benefited in a less degree with such percentage of one hundred as the benefits received bear in proportion thereto. They shall also make an equitable apportionment of the costs, expenses, fees, and damages computed on the basis of the percentages fixed.

Iowa Code § 468.39. Iowa Code section 468.40 further provides:

In estimating the benefits as to the lands not traversed by said improvement, [the commissioners] shall not consider what benefits such land shall receive after some other improvements shall have been constructed, but only the benefits which will be received by reason of the construction of the improvement in question as it affords an outlet to the drainage of such lands, or brings an outlet nearer to said lands or relieves the same from overflow and relieves and protects the same from damage by erosion.

Drainage District Number 126 consists of a main drainage ditch extended east-west over two farms, including the Naeves', fed by several laterals extending into two other landowners' farms. The individual landowners may tile their lands to drain into the main or the laterals. The main directs water flow to an outlet located at the easternmost boundary of the Naeves' farmland. Thus, the drainage facility traverses multiple owners' land and benefits even non-traversed land by providing a convenient drainage path. Classification and assessment is a process by which the commissioners determine how much benefit each landowner receives from the drainage facilities and consequently how much of the installation cost each should be pay.

According to the engineer, the commissioners applied the "relative benefit" method of assessment as prescribed by section 468.38. They began by dividing the lands served by the drainage facilities into parcels of forty acres or less. They then classified each parcel of land based on three factors: a "use factor," a "proximity factor," and a "length factor." The use factor is related to the land's need for drainage. Under Iowa Code section 468.40, the parcels with the greatest need for drainage receive the highest score of one hundred. The proximity factor is determined by how far an owner's land is from the improvement. Land that is farther away is assessed a lower proportion of the

cost because the landowner must pay more to install tile to connect to the drainage facilities. The length factor relates to how much of the drainage facilities each parcel uses. Parcels that are farther upstream are assessed a higher proportion of the cost because they use a greater length of the system. The classifications and assessments depend on the availability of the drainage facility to the land, not the landowner's actual use of it. The commissioners also considered the type of soil and the type of land. The commissioners classified each parcel in relation to the parcels receiving the most benefit and adjusted by percentages: a parcel receiving only one-quarter of the benefit of the most benefited parcel was adjusted to a twenty-five percent benefit. Once the commissioners classified how much benefit each parcel received, they determined an abstract benefit value by which to determine how much each individual landowner should contribute to the costs of installing the drainage ditch.

The commissioners took the number of acres in each parcel, multiplied by the benefit value for that parcel, to reach a value representing the total benefit to the parcel. They then determined how much benefit each parcel received as a percentage of the total benefit of the entire district. They then divided the total cost of the drainage district installation proportionally to the benefit received by each parcel. Each landowner owned several parcels. Adding these together, the commissioners determined what proportion of the total costs should be assessed to each landowner.

The Naeves contend the commissioners made a number of errors in their classifications and assessments. Their argument is that each of these asserted errors amounts to a lack of substantial compliance with the statutory requirements of the commissioner's report. However, nothing in the Naeves' argument, nor in the record shows that the assessment is the result of fraud, prejudice, or mistake. *See Schwarz Farm Corp.*, 196 N.W.2d at 576. The Naeves argue the assessment contains "glaring errors and omissions" which are "prejudicial to the landowner's rights." Nonetheless, the Naeves were required to show the engineer was influenced by motives of fraud or prejudice, or that the engineer committed a gross error or mistake.

First, the Naeves assert the commissioners failed to treat land not traversed by the drainage facility differently from lands traversed, as required under Iowa Code section 468.40. Second, they argue the commissioners ignored the statutory concept of proximity and preexisting improvement. The drainage facility does not traverse the Naeves' land in Section 14. Section 14 is south of Section 11—Section 11 is traversed—and separated by a gravel road. The tile the Naeves installed in Section 14 drains across Section 11 and into the district's main. The Naeves argue that, since the land in Section 14 is not traversed by the drainage facility, it should have been classified as receiving a minimal amount of benefit. The engineer, however, testified that the commissioners adjusted the factors appropriately for Section 14. They classified all agricultural land as receiving only thirty-three percent of the benefit received by parcels receiving the most. With respect to Section 14, they assigned a

proximity factor of fifteen percent of the benefit because it is located farther away from the drainage facility.

The Naeves also contend they should have been given benefit reductions based on the length of the drainage facility their Section 11 and Section 14 land use. They argue their Section 11 tile connects to the main only about 150 feet from the outlet on the eastern boundary of their property. They also argue their Section 14 tile connects to the main only fifty feet from the outlet. Thus, because their drainage system uses a shorter length of the drainage facility they should have been assessed a minimal amount. However, the commissioners also reduced the length factor for Sections 11 and 14 to sixty percent benefit. Only one other parcel, also belonging to the Naeves, received reductions based on proximity or length.[9] Thus, the commissioners considered whether the drainage facility traversed the Naeves' parcels, their proximity to the facility, and their use of the facility and made reductions to their benefits accordingly. We perceive no gross error in the commissioners' classifications on this basis.

The Naeves' final contention is the Board failed to consider benefits received by non-agricultural land in the drainage district differently from benefits received by agricultural lands and state the benefits as required by statute. As stated above, the engineer testified the commissioners reduced the benefit to all agricultural land to only thirty-three percent of the benefit received by non-agricultural lands. The commissioners assigned the school a use factor of 1.75, or 175, the greatest amount of benefit. Although this classification deviates from

[9] Another small parcel of the Naeve property received a twenty-five percent benefit for proximity and sixty percent benefit for length.

the code, which specifies a 100-point scale where the parcel receiving the greatest benefits receives 100 points, the scale the commissioners used still indicates the school received the greatest possible benefit and all agricultural lands received less than one third of the benefit of the school. The engineer testified the commissioners gave these classifications because a school with a large roof area and parking lots creates more run-off than agricultural land. The commissioners therefore reduced the benefit to agricultural land significantly in comparison to the non-agricultural land. The engineer also testified the commissioners listed the specific benefits to the non-agricultural land as separate line items in their classification report and explained the specific benefits to the Board in their meetings. Again, we perceive no gross error in the commissioners' classifications and assessments.

The Naeves were required to show the engineer was influenced by motives of fraud or prejudice, or that the engineer committed a gross error or mistake. There is no evidence of fraud, prejudice, or mistake. The engineer's testimony was that the commissioners applied the statutorily mandated procedure for classification, and we find there was no gross error in the procedures they used. The presumption that the commissioners were correct is strong and the Naeves have not overcome it. Thus, we reject their argument that the commissioners failed to use the appropriate mechanisms for classification.

## IV. Conclusion.

Upon our de novo review, we conclude the Naeves waived their arguments regarding procedural deficiencies in the creation of Drainage District

Number 126 by failing to timely file objections to notice or any other claimed procedural defect and by failing to timely file a remonstrance. We also conclude there was no evidence of fraud, prejudice, gross error, or evident mistake in the commissioners' classifications and assessments associated with the drainage district. Accordingly, we affirm.

**AFFIRMED.**